GAMMAGE *et al. vs.* THE GEORGIA SOUTHERN RAILROAD COMPANY.

1. Where a bill alleged that for the purpose of securing the right-of-way through land, a railroad corporation had the writ of *ad quod damnum* issued, assessment made, from which there was an appeal to the superior court, and final trial had, resulting in a verdict for the property owner, simply finding for him $1,250.00, and directing that upon the payment of such sum the title to the land should vest in the company, but establishing no special lien thereon; and that pending these proceedings the railroad first taking possession of the property became insolvent, and was sold under decree to defendant, which has since been using the same as part of its right-of-way and road-bed, praying injunction against the use of said land until payment of the assessment, and for general relief, it was error to dismiss the same on demurrer. There is no common law remedy adequate to such a case.

2. As complainants have belayed so long before making application for injunction, this court will not interfere with the discretion exercised in refusing the same, but will direct that the chancellor, on final trial, shall submit to the jury whether the injunction shall issue, to be stayed ———— days to enable defendant to make payment.

Equity. Injunction. Railroads. Constitutional Law. Eminent Domain. Before Judge UNDERWOOD. Floyd County. At Chambers. April 9th, 1880.

Reported in the decision.

ALEXANDER & WRIGHT; WRIGHT & FEATHERSTON, for plaintiffs in error.

DANIEL S. PRINTUP, for defendant.

HAWKINS, Justice.

Davis Gammage and John H. Sheibley brought their bill in equity in the superior court of Floyd county against

the Georgia Southern Railroad Company, in which they allege the following facts:

On August 26th, 1869, Davis Gammage owned and possessed a farm near the city of Rome, in said county. On that day the Selma, Rome & Dalton Railroad Company obtained from the clerk of the superior court of said county, under its charter, a writ of *ad quod damnum*, directed to the sheriff, requiring him to summon a jury to assess the compensation which the railroad company should pay said Gammage for right-of way for their road through his said farm. The jury having been duly summoned by the sheriff, met on August 31st, 1869, and rendered a verdict which, omitting the preliminary recitals, is as follows:

"We, the jury, find that the said Selma, Rome & Dalton Railroad shall pay the said Davis Gammage $384.00 damages for the right-of-way, and such other and further rights as are incident thereto; and that the said Selma, Rome & Dalton Railroad Company shall, in consideration thereof, and in consideration of the advantages and increased value of the property of said D. Gammage, by reason of said railroad's running through the same, be entitled to a strip of land 100 feet wide the whole length through said land, * * * and the title to said strip of land, with the rights incident thereto, shall vest in the said Selma, Rome & Dalton Railroad Company, upon a full compliance with the terms of this verdict."

From this verdict Gammage appealed to the superior court, where the case was tried at the January term, 1874, and a verdict rendered assessing the damages at $1,400.00. The railroad company moved for a new trial, which was granted unless Gammage would write off the verdict to $800.00, which he declined to do. The case was again tried at the March term, 1879, when the jury rendered a verdict for $1,250.00. The railroad company again moved for a new trial, which was refused. The case was then carried

to the supreme court, where it was heard at the September term, 1879, and the judgment of the court below refusing a new trial affirmed.

Pending this litigation, the lands in question, on March 4th, 1873, were sold by the United States marshal for the northern district of Georgia, as the property of Gammage, under a decree of the Federal court, and John H: Sheibley became the purchaser, and has since owned the same. He and Gammage have agreed between themselves as to the recovery that may be had for said right-of-way.

The railroad company had, before beginning the proceedings to assess the damages, taken possession of the land and built its road on it. It continued to occupy and use the land for its railroad up to the month of November, 1874, when the company having become insolvent, its railroad, together with its franchises and all its property situated in this state, was sold under a decree of the superior court of Floyd county, and bought by a company of individuals who, on the second day of March, 1875, had themselves incorporated by the legislature under the name of the Georgia Southern Railroad Company, with right to hold and enjoy all the rights, franchises and prop erty which had belonged to the Selma, Rome & Dalton Railroad Company, in this state. The last named company thus became extinct, and the proceeds of the sale of its property, franchises, etc., were distributed by the court to its creditors.

The new company, since its purchase of the railroad, has been continuously, and is now, in possession of the land in question, running its trains daily over the same. This company, at the time of its purchase, had full notice of the pendency of the proceedings to assess the damages for right-of-way through this land, and that the former company had not obtained such right-of-way. D. S. Printup, one of the purchasers, and a director in the new company ever since its formation, was also a direc-

tor and the vice-president of the old company; was its attorney in the assessment proceedings from their initiation to the time of the sale of the road, and, as a commissioner appointed by the court, sold the road to the new company.

The Selma, Rome & Dalton Railroad Company having become extinct, and having no officers, agents or attorneys to prosecute or defend suits, the new company, the Georgia Southern, after its purchase of the road, carried on and conducted the litigation in regard to the damages for right-of-way aforesaid, in the name of the Selma, Rome & Dalton Railroad Company, to the final termination thereof. And this company reserved out of the purchase money at its purchase of the road, an amount to meet whatever sum might be finally assessed for said right-of-way through this land in the proceedings then pending.

After the termination of the suit to assess the damages, and the confirmation by the supreme court of the final verdict assessing $1,250.00 for such damages, the complainants expected that the Georgia Southern Railroad Company would pay the amount assessed without further trouble, but they have made demand upon it for payment of the assessment, and have been refused.

The prayer is for an injunction to restrain the defendant from passing over or trespassing upon said land, until it shall pay to complainants the amount assessed for right-of-way over said lands, with interest from the date of the assessment, and all costs; that upon the final hearing the defendant may be required to pay said assessment, and also the sum of $250.00 for the attorney's fees of the complainants, and for general relief.

Upon this bill, the judge of said court, the Hon. J. W. H. Underwood, upon application of the complainants, granted at chambers an order requiring the defendant to show cause why the temporary injunction prayed for

should not be granted. This application came on for hearing on April 8th, 1880, when the defendant filed its demurrer to the bill, alleging the following grounds :

1. There is no equity in the bill.

2. The complainants have an adequate remedy at law.

3. Misjoinder of parties complainant.

4. Misjoinder of parties defendant.

5. Complainant, Gammage, has a judgment at law adequate and complete against the Selma, Rome & Dalton Railroad Company.

6. The defendant has no interest in unison with the Selma, Rome & Dalton Railroad Company, that would entitle the complainants to any relief or action either in equity or at law against this defendant, and especially none under the charges in said bill.

The court upon the hearing refused the injunction, and also sustained the demurrer and dismissed the bill upon the ground that there was no equity in the bill, and the complainant had an adequate remedy at law.

The bill of exceptions recites the facts as to the hearing and the action of the court, and complains that the court erred in refusing the injunction, and also in sustaining the demurrer and dismissing the bill.

1. Was the decision of the chancellor right in dismissing the bill upon the ground that complainants had a complete common law remedy ?

In 54 *Ga.*, *Remshart vs. Savannah & Charleston Railroad Company*, this court held that a landowner whose property was taken years ago for roadway by a railroad company, and who had lately obtained judgment for damages according to the charter, has, so far as appears, an ample legal remedy by levy and sale, or by ejectment; and that another company succeeds by charter to the rights and privileges of the former (which has been levied on by virtue of the judgment), is no ground for enjoining the latter company from using the roadway.   If the com-

plainant still had title, he can recover in ejectment, with *mesne* profits, and if he has not title, his judgment stands in lieu thereof, and his remedy to collect is not defeated by the mere interposition of the claim.

We presume the chancellor dismissed the bill on consideration of the case in 54 *Ga.*, 598.

Whether the property levied on in that case was real or personal estate owned by the Savannah & Charleston Railroad Company, used in the transportation by it as a public carrier, or property otherwise claimed and held, does not appear, nor does it appear but that the judgment in that case was by adjudication a special lien, moulded as is required in §§3082, 3362, 3639 of the Code, in either of which cases the complainant would have an adequate remedy by levy and sale, or by ejectment; because, in the one case, he would have perfect title that could not be appropriated without compensation, and in the other, a judgment as *in rem*, fixing the liability of the corporation and the mode of enforcement.

The case at bar is quite different. Here the taking was sought by a foreign corporation, domesticated by act of the general assembly of the state of Georgia, under a writ of *ad quod damnum*, assessment of value made, from which there was an appeal and final trial had at the March term, 1879, of Floyd superior court, resulting in a verdict for $1,250.00, in the following language, in substance: " We the jury find that the Selma, Rome and Dalton Railroad Company shall pay to said complainants, $1,250.00, and upon the payment of said sum the title to the lands shall vest in said company."

There was no special lien created by the judgment as the Code provides, and therefore, according to the ruling of this court in the case of *City of Atlanta vs. Grant, Alexander & Co.*, 57 *Ga.*, 340, the road-bed, cars, rolling-stock, and such property as serves the public by the corporation as a common carrier, could not be sold; and,

v 65—40

besides, the damage to the land might be ruinous either to his own use or to any one else except the corporation.

This judgment, having none of these properties, cannot sell the defendant's railroad property, and the complainants are remediless in this regard.

The effect of a recovery in ejectment would not do the complainants complete justice, because, concede them right, and the eviction accomplished by the sheriff under the writ of possession, yet the corporation could offer just compensation, say the next day, and put the complainants to continued expense, delay and litigation. These troubles in the enforcement of the common law remedies, make it wise for a court of equity, which is always open and does justice, not by halves, but entire and complete, to all the parties, to take jurisdiction of the case and administer the law.

Besides, it was strongly intimated by this court in the case last mentioned, 57 *Ga.*, 340, that these public interests are not subject to levy and sale by judgment at law, and we think the court erred in dismissing the bill.

2. We have no doubt upon the other point, if the complainants had not delayed so long in the application for injunction.

It is the exercise of the highest power known to government to take the property (perhaps the home) of one man without his consent, and transfer it to another on the payment of just compensation, and hence all good governments disallow the same until the compensation is paid or tendered, and yet this corporation has used the complainants' land now for over ten years, without rent and without payment.

The Selma, Rome & Dalton Railroad Company became bankrupt, and was sold out to the present company, the defendant, at judicial sale, with possession, and it became subrogated to all the former's rights, and still continues the use of complainants' land without compensation. Complainants are in a court of equity, with an established claim

of $1,250.00, fixed by a jury and affirmed by this court, without a judgment with any special lien ; a bare right to enter after eviction or ejectment, to be dispossessed the next day.

We think an injunction a proper remedy, but inasmuch as the complainants have so long delayed to seek this, the harshest of all civil remedies, we do not reverse the judge on that point, but direct that if on the trial of the case before the jury, the decree shall be for the amount to which complainants are entitled, then the chancellor will submit to the jury, as part of the case, and they may decree that the injunction issue, to be stayed ——— days to enable defendant to make payment, and upon default the injunction to become operative.

Judgment reversed.