## FARKAS *v.* TOWNS *et al.*

1. If an owner of land, by raising its surface, diverts the natural flowage of surface-water and causes it to flow upon and injure adjacent land and a building thereon, he is liable in damages to the owner of the property thus injured. The latter would, under such circumstances, be entitled to compensation from the wrong-doer for any diminution in the market value of the property thus injured; and even if the wrongful act caused an increase in such market value, the wrong-doer would nevertheless be liable for the actual damages resulting from injuries to the building, and from a dimi-

nution in the value of the premises for use. While in such case there could be no recovery for loss in market value if the same was in fact increased, the amount of the increase could not be set off against such actual damages so as to prevent a recovery for the same.

2. The charge complained of, though in some respects subject to criticism, was substantially in accord with the law as above laid down, and there was sufficient evidence to warrant the verdicts rendered.

<div align="center">Argued October 23, — Decided November 29, 1897.</div>

Action for damages. Before Judge Spence. Dougherty superior court. August 2, 1897.

Lucy A. Towns, the owner of a life-interest in certain land in the city of Albany, and W. D. Towns and others, owners of the remainder in fee in the same land, brought separate suits against Farkas for damages to the land, alleging, in brief: Adjoining said land is land owned by the defendant, upon which there was a lime-sink or natural depression over a subterranean stream into which the water which fell or ran upon the land emptied, there being a gradual slope from the plaintiffs' land to the defendant's land; so that the water from rains did not remain on the plaintiffs' land. Defendant has filled up this lime-sink with earth, etc., and elevated his land to the line of plaintiffs' land, creating a basin around and under the house on plaintiffs' land occupied by Lucy A. Towns as a home, so that after each rain the water which formerly ran from plaintiffs' land now remains on it, and the water which formerly ran on defendant's land from other sources than plaintiffs' land, is now turned upon plaintiffs' land, and remains there until removed by evaporation and natural percolation through the soil, making the house unapproachable, unhealthy, and unfit for occupation, and causing the earth to cave in and the chimney of the house to sink, etc. The house on plaintiffs' land was erected many years before defendant became the owner of the land; and defendant, who, prior to the filling up of his land as before stated, owned an acre and a half of pond in rainy weather, now has an acre and a half of high and dry land of great value, while plaintiffs' property, which was formerly valuable, is now damaged and their house worthless. The amount sued for in each of the cases was $3,000. Both cases were consolidated and tried together, and a verdict was

rendered in favor of Lucy A. Towns for $87.50, and one in favor of the other plaintiffs for $112.50. The defendant moved for a new trial, upon the grounds that the verdicts were contrary to law, evidence, etc., and that the court erred in charging the jury as follows: "It is contended by the defendant, that on account of the worthlessness of both of these lots, resulting from the unhealthful condition of the Farkas lot, the plaintiffs' lot has been, enhanced in value by the filling in of the Farkas lot, because it has been made more healthful, and this unsightly lot has been removed. I charge you that this has nothing to do with this case; you have no right, if you find that the plaintiffs have been damaged by this surface-water being forced up there on their lot—if you find that this lot of the plaintiffs has been damaged by the act of the defendant, you have no right to reduce that damage by any supposed enhancement of its value resulting from the removal of the unsightly lot adjacent to it. The law is, that a man who owns an adjoining tract of land has no right to force his neighbor, whose land is more elevated, to go to the expense of filling up his lot so as to bring it on a level with the lot thus raised by the first party. The reason of that is, one citizen may be less able to go to the expense of filling in a piece of ground than another. A poor man might own a lot of land adjacent to another lot that is lower than his, owned by a man who is able to make a valuable piece of property out of it. He would have no right to fill in his land and thus benefit the health and appearance of the adjacent lot, and claim credit from the adjacent landowner who suffered actual damages by reason of the fact that the surface-water is thus forced back on his lot." The motion was overruled, and defendant excepted.

*Jesse W. Walters*, for plaintiff in error.
*W. T. Jones* and *E. R. Jones*, contra.

FISH, J. 1. In the case of *Goldsmith* v. *Elsas, May & Co.*, 53 *Ga.* 186, it was decided that, "Where two city lots adjoin, the lower lot owes a servitude to the higher so far as to receive the water which naturally runs from it, provided the owner of the latter has done no act to increase such flow by artificial

means." This is in accordance with the rule of the civil law. By the civil law, the right of drainage of surface-water, as between owners of adjacent lands of different elevations, is governed by the law of nature. The owner of land which, relatively to that of an adjoining proprietor, is the lower estate, is bound to receive the surface-waters which naturally flow from the upper estate, provided the industry of man has not created or increased the servitude. And if by raising an embankment upon his premises, or by other means, he expels surface-water from his own land and causes it to flow back upon that of the upper proprietor, or so obstructs the natural flow of such water as to prevent its escaping from the dominant estate, he is liable to such neighboring proprietor for any damages resulting to the latter in consequence of his act. There are some slight modifications of this rule, in the interest of agriculture, which it is not necessary to consider here. The rule of the common law is different, and is stated by the court in Hoyt *v.* City of Hudson, 27 Wisc. 659, in the following language: "The doctrine of the common law is, that there exists no such natural easement or servitude in favor of the owner of the superior or higher ground or fields as to mere surface-water, or such as falls or accumulates by rain or the melting snow; and that the proprietor of the inferior or lower tenement or estate may, if he choose, lawfully obstruct or hinder the natural flow of such water thereon, and in so doing may turn the same back upon or off on to or over the lands of other proprietors, without liability for injuries ensuing from such obstruction or diversion." The decisions of the courts of this country upon the question are conflicting, owing to the fact that some of them follow the rule of the common law and others accept that of the civil law. In the case of *Mayor of Albany* v. *Sikes,* 94 *Ga.* 30, this court, after a careful consideration of these two conflicting rules, decided to follow, "as the true law of this State, the rule of the civil law; it being, of the two, the sounder, the more consistent with natural justice and right, and the more in harmony with our system of law and the general conditions of the commonwealth of this State." Such, then, being the law of this State, when Farkas, who, relatively to the plaintiffs,

owned the lower and servient estate, filled up the natural depression or basin which existed upon his premises and raised the level of his land above that of the plaintiffs' lot, and by this reversal of the order of nature caused the surface-water to accumulate and stand on the land of the plaintiffs, he became, as to them, a wrong-doer, and rendered himself liable for any damages which they should sustain in consequence of his wrongful act. After he had raised the level of his lot above that of the plaintiffs, and after the water had been ponded for several days upon the premises of the latter, upon which there was a dwelling-house, the ground beneath a double-stack brick chimney, which furnished fireplaces to two adjoining rooms of the house, and which had rested securely upon its foundation for more than twenty years, suddenly gave way, precipitating the entire chimney several feet below the surface of the ground and leaving a large and deep cavity immediately under the house. The fall of the chimney injured the plastering and left a hole in the floor where it had stood. There was testimony which showed the formation of another sink near the kitchen. In addition to these physical injuries to the land and the building thereon, the evidence showed that the premises were otherwise rendered less suitable and desirable as a residence lot, to which purpose they had been devoted, by reason of the ponding of the water upon them. The plaintiffs alleged, and the testimony strongly tended to show, that all these damages resulted from the acts of the defendant complained of.

The material question to be considered is, whether the defendant could set off against these actual, physical damages to the plaintiffs' property, or against damages which they sustained by reason of a diminution of the value of their premises for the use to which the same were devoted, an increase in the market value of the property occasioned by the act which caused the damages. If by his wrongful act the defendant caused a diminution in the market value of the plaintiffs' lot, they would be entitled to compensation from him for the loss which they thus sustained. In reply to evidence supporting a claim of this character, the defendant would have the right to show that the

market value, in consequence of the act complained of, had in fact been increased. Proof of an increase in market value would give the defendant no right to recoup against the plaintiffs for the amount of such increase, but would simply show that there had been no decrease in market value, and therefore the plaintiffs were not entitled to recover on that account. But an increase in market value could not be set off against any compensation to which the plaintiffs were entitled for actual, physical injuries to their lot and the building thereon, nor could it be set off against damages which they sustained by reason of a diminution of the value of their property for use. A wrong-doer can not escape liability for the destruction of his neighbor's house by showing that, in consequence of the act which caused its destruction, the lot upon which the house stood is worth more than it was before the house was destroyed. His neighbor was entitled to possess, use and enjoy both his house and his lot, in their existing conditions, and can not, after the destruction of the former, be compelled to sell the lot, or to devote it to a different use, in order to obtain compensation for the loss which he has sustained. *Davis* v. *East Tenn. Ry. Co.*, 87 *Ga.* 605, 612; Gerrish *v.* New Market Man. Co., 10 Foster (N. H.), 485; Marcy *v.* Fries, 18 Kan. 353; Francis *v.* Schoellkopf, 53 N. Y. 153. Nor could such wrong-doer escape liability for any diminution in the value of the premises for use by showing that the market value of the property had been increased. "The owner of property is entitled to use it in its present condition, and one who unlawfully hinders, obstructs or interferes with such use can not appeal to the increased market value which might be realized if the property were devoted to other purposes, and take credit for such increase by way of indirect set-off against the direct loss or injury which he has occasioned." *Davis* v. *East Tenn. Ry. Co.*, supra.

There is no conflict between the views here expressed and the decision in the case of *Hurt* v. *City of Atlanta*, 100 *Ga.* 274. It is true that it was decided in that case that as against a demand for compensation for consequential damages arising to the plaintiff's property by reason of the building by the city of a bridge on one of its streets, the city could set off enhancement

in the market value of such property occasioned by the erection of the bridge.    But there are wide differences between that case and this.    There the city had a perfect right, under its charter, to build the bridge, and in doing so, it was exercising a governmental power in the interest of the public.    It was therefore not a wrong-doer; and the law of assessment for property taken or damaged for public purposes was applicable to the case, and not the law of nuisance.    Here the defendant was a wrong-doer, and the law of nuisance is applicable between the parties. In that case the city did nothing changing in the slightest degree the physical status or condition of Mrs. Hurt's property as it stood before the bridge was built.    Her property was not invaded.    Here, as we have seen, the plaintiffs' property was invaded and serious physical injuries inflicted upon it.    In the *Davis* case, supra, the railway company was a wrong-doer, and although it did not touch the property of Mrs. Davis or change its physical status, it was held liable for diminution in the annual value of the same for use.

2. The charge of the court complained of, though in some respects subject to criticism, was substantially in accord with the law as above laid down.    The evidence in reference to the damages sustained by the plaintiffs in consequence of the actual physical injuries to their property, alone, fully authorized the verdict rendered.

<div align="center">

*Judgment affirmed.    All the Justices concurring.*