### LANGLEY *v.* CITY COUNCIL OF AUGUSTA.

1. The general rule is that a municipal corporation can not acquire real estate beyond its territorial limits or lawfully perform any act beyond such limits, unless the power to do so is expressly given by law.
2. Upon reason and authority the acquisition of land for the purpose of perfecting a system of drainage or sewerage and the construction of drains and sewers as a part of such system should be an exception to the general rule.

3. The decision in *Loyd* v. *Columbus*, 90 *Ga.* 20, which rules to the contrary of the proposition stated in the headnote last preceding, criticised and doubted.

4. Where an act is done by the officers and agents of a municipal corporation, which is within the corporate power and might have been lawfully accomplished had the municipal authorities proceeded according to law, the corporation will be liable for the consequences of an act of such officers or agents proceeding contrary to law or in an irregular manner. Aliter, where the act complained of lies wholly outside of the general or special powers of the corporation.

5. If the authorities of a city are authorized to construct a drain and sewer in a particular manner, after complying with given formalities, the city will be answerable in damages to a party sustaining injury as a consequence of the construction of such drain or sewer, though the method prescribed is not followed.in making the construction.

6. If the authorities of a city authorized to construct drains and sewers beyond its limits construct the same without complying with the formalities prescribed by the charter, or, after the drain or sewer is completed, take charge of the same and regulate it as a part of the system of drainage and sewerage of the city, the city, when sued for an injury resulting from the construction and maintenance of such drain or sewer, can not defend by alleging its want. of authority to do the act complained of.

7. Under the act of December 8, 1880 (Acts 1880–81, p. 365), relating to the organization, powers, and duties of the board of health of the City of Augusta, the city authorities have the right to construct drains and sewers outside the limits of the city, after compliance with the formalities prescribed in the act.

8. If a municipal corporation negligently constructs a drain or sewer, or maintains the same in such a manner as to constitute a nuisance it is liable in damages to any one injured thereby.

9. If the nuisance thus resulting is of a permanent nature the person injured is entitled to compensation for all damages, both past and prospective. If the nuisance is not of a permanent character, but one which may be abated at any time, and upon its abatement no further injury will result, suit may be brought for the recovery only of those damages which have been actually sustained within the period prescribed by the statute of limitations before the suit is brought.

10. Even though a drain or sewer be properly constructed and properly maintained, if it results in damage to the property of a private citizen, he is entitled to compensation for such damage. In such a case the measure of damages for injury to the freehold is the difference in market value before and after the injury was inflicted.

(a) The petition in the present case, properly construed sought to recover damages both for permanent injury to the freehold estate, resulting from the mere presence of the ditch in front of plaintiff's property, though it be properly constructed and properly maintained, as well as actual damages sustained as a consequence of the ditch having been maintained, during the time specified in the petition, in such a manner as to constitute a nuisance.

(b) Evidence of unsightliness and general appearance of the ditch is admissible on the question of diminution in market value.

(c) Evidence of injury to shade-trees by the construction of the ditch is also admissible for this purpose.

11. The act of December 20, 1899, providing that notice of the time, place, and extent of injuries to persons or property, claimed to have been inflicted by a municipal corporation, shall be given to its officers before suit is brought, does not require absolute exactness of description, but simply that information as to the matters referred to may be given with sufficient definiteness to enable the city authorities to examine into the alleged injuries and determine whether the claim shall be adjusted without suit.

12. If the notice and the petition correspond in all substantial respects as to the matters information of which is required to be given, the variance is immaterial.

(a) A statement in a notice claiming damages for injury to shade-trees " set out by the owner in front of his property " does not materially vary from an allegation in the petition claiming damages for injury to shade-trees which the plaintiff had "planted in the enclosure on his premises."

(b) Semble that objection on the ground of variance should be taken advantage of by special demurrer, the notice being attached to the petition as an exhibit.

13. Title to a portion of a public street or road can not be acquired by prescription. Nor can the right to have a ditch constructed in a public street or road, for the purpose of carrying off surface-water, remain in an unchanged condition, be acquired by prescription.

Argued July 16, — Decided August 14, 1903.

Action for damages.    Before Judge Eve.    City court of Richmond county.    September 11, 1902.

*E. H. Callaway* and *C. E. Dunbar*, for plaintiff.
*William H. Barrett*, for defendant.

COBB, J.    Langley is the owner of three lots with houses thereon, located just south of Turknett Springs road, which is either in or near the city of Augusta.    He brought suit against the city for damages, and in his petition alleged :    When plaintiff bought the property above referred to, there was a small ditch between Turknett Springs road and the property, sufficient to carry off all the water which from time to time fell or accumulated in that locality, or to which the drain was subject from its adjacent and natural watershed.    After plaintiff bought and entered into possession of the property, the city constructed a large ditch between his property and the road, and also built a sewer or culvert to connect this ditch with another large ditch running in a different direction, the effect of which was to divert the water which flows into the ditch last mentioned, through the culvert, into the ditch which had been built in front of plaintiff's property.    This latter ditch was left opened, uncovered, exposed, without curbing or supports, and without any protection whatever against caving, widen-

ing, or washing. As a result of this action of the city, water remains in the ditch all the time, becoming stagnant and rendering the premises of plaintiff sickly and unhealthy. During heavy rains the ditch is not large enough to carry off all the water which flows into it, though before the culvert was constructed and the water from the other ditch thereby diverted the drain in front of plaintiff's property was amply sufficient at all times to carry off and properly drain all the water which came into it. Now the ditch frequently overflows the yard and premises of plaintiff, keeping the same constantly damp and wet, rendering the premises muddy and sloppy and sickly and unhealthy. The ditch has been constantly caving and widening, causing a quantity of plaintiff's land to fall in, and causing the supports under the porch and front portion of his storehouse to fall in. The construction and maintenance of the ditch has also greatly interfered with plaintiff's access to the Turknett Springs road, rendering necessary the construction of several bridges across the ditch; and the life of a number of shade-trees which plaintiff planted in the enclosure on his premises near the road has been endangered. It is alleged in the petition that the construction and maintenance of the ditch constitutes a continuing nuisance. It is also alleged that the market value of plaintiff's property has been diminished more than one half by the construction and maintenance of the ditch as above set out. Attached to the petition is a copy of a notice of plaintiff's claim for damages, which it is alleged was duly served upon the city before the suit was brought. In answer to the petition the city set up two defenses. (1) It is alleged that by the construction of the culvert or sewer connecting the two ditches the water was merely restored to its natural flow, and that no burden was placed upon the ditch in front of plaintiff's property that did not belong there naturally. (2) It is claimed that the work done by the officers and employees of the defendant was done outside of the limits of the city, and was for this reason ultra vires, and that the city is not liable for any injurious consequences resulting to the plaintiff therefrom. The case went to trial, and resulted in a verdict for the defendant; and plaintiff's motion for a new trial was overruled. To this he has excepted. The defendant excepts by cross-bill to the judgment overruling its motion for nonsuit.

1–7. Counsel for both sides addressed themselves in the argument in this court largely to the question as to whether the ditch which is the subject-matter of the plaintiff's complaint is inside or outside the city, this being an exceedingly doubtful question under the laws relating to the boundaries of the city of Augusta. After a careful examination of the record and the law relating to the issues raised by the pleadings, we are convinced that this perplexing question need not be decided in this case. A municipal corporation being a governmental institution, designed to create a local government over a limited territory, the general rule is that such a corporation can not purchase and hold real estate beyond its territorial limits or lawfully peform any act beyond such limits, unless the power to do so is expressly given by the legislature. Tied. Mun. Cor. § 201. See also *City Council of Augusta* v. *Mackey,* 113. *Ga.* 64, 66. There are sound reasons why this rule should not be extended to the construction of drains and sewers or the acquisition of land for that purpose. Every consideration of propriety, and oftentimes absolute necessity, demands that this should form an exception to the general rule. It should not be presumed, unless the language of the municipal charter or of some legislative act requires it, that the General Assembly intended to restrict a municipal corporation to the use of land within its limits for the purpose of constructing drains and sewers. These corporations ought to be encouraged, if not absolutely required, to carry their sewage and surface-water charged with decaying matter beyond their limits to a point where the lives and health of the inhabitants of the city and adjacent territory would not be injuriously affected by them. To say that a municipal corporation could not acquire land for this purpose beyond its limits, and that therefore it must discharge its sewage and drainage inside the city, would be equivalent to saying in many cases that it is the duty of a municipal corporation to discharge matter reeking with fetid odors and noxious gases in the very midst of its citizens. Such a suggestion is intolerable. Authority is not wanting to sustain the proposition above stated. The case of Coldwater *v.* Tucker, 36 Mich. 474, s. c. 24 Am. Rep. 601, is directly in point; it being there held that a municipal corporation has power, unless prohibited by its charter or a statute, to make contracts and construct works beyond the corporate limits for the discharge of sewage, where such discharge.

is necessary or manifestly desirable.    This decision is cited by
many of the text-writers with approval, some of them stating un-
qualifiedly in the text the rule laid down in the decision.  See Tied.
Mun. Cor. § 294; Ell. Rds. & Sts. § 468; 10 Am. & Eng. Enc. L.
(2d ed.) 247; 1 Dill. Mun. Cor. § 446, p. 263 (note); 2 Ibid. p.
1333 (note).    See also Lester v. Mayor, 69 Miss. 887; Cummins
v. Seymour (Ind.), 41 Am. Rep. 618; Cochran v. Park Ridge, 138
Ill. 295.  The case of Village v. Whittingham (N. J.), 35 Atl. 407,
seems to be contra, but three judges dissented.  In *Phinizy* v. *Au-
gusta*, 47 *Ga*. 260, it was tacitly recognized that the city would,
under general law, be liable for damages resulting from an act done.
outside of the city limits in connection with the drainage system
of the city.

It is said, though, that this court is committed to the proposition
that a municipal corporation can not, without legislative authority
so to do, lawfully construct a drain or sewer beyond its limits; and
the case of *Loyd* v. *Columbus*, 90 *Ga*. 20, is cited to sustain this
contention.  It does not appear from the report of the case, but the
original record shows, that the ditch dug by the City of Columbus
was a part of a system of drainage for the city.   It was held that
a declaration alleging that the mayor and council of a city had
caused a deep ditch to be cut near, in, and upon the plaintiff's land
outside the limits of the city, thereby causing his land and fence to
fall and cave into the excavation thus made, was rightly dismissed
on demurrer, because the acts of the city complained of were ultra,
vires, it having no power or jurisdiction over the land in question.
We agree with counsel for defendant in error that this decision di-
rectly supports the general proposition which he lays down; and as
there was no motion to have the case reviewed and overruled, it
must be taken as decisive of the general question.  It must there-
fore be determined whether, under the charter of the City of Au-
gusta, the acts complained of by the plaintiff were wholly ultra
vires, in the sense that no liability could attach to the city for
their negligent performance, or for their proper performance when
the property of the plaintiff was thereby taken or damaged.    In
1880 the charter of the City of Augusta was amended in various.
particulars relating to the organization, duties, and powers of a
board of health for the city.    See Acts 1880–81, p. 365.    That
act provided as follows:    " The said Board of Health shall have.

control of the drainage and sewerage of said city, but no extended system of drainage or sewerage, requiring expenditures of money from the city treasury beyond the appropriation made for said board by council, shall be undertaken until the same shall have been submitted to, and received the sanction and approval of, the City Council. When the said board and council shall have agreed upon a plan or system of drainage or sewerage, in the manner aforesaid, it shall be the duty of the municipal authorities to have said plans executed, and provide for the expenses of the same. The said Board of Health shall have full power and authority to inaugurate any system of drainage and sewerage that they may from time to time deem necessary for the improvement of the sanitary condition of Augusta, but before putting the same into operation it shall receive the approval and sanction of the City Council; and they are further authorized and empowered, in order to perfect any system of drainage and sewerage determined upon, as aforesaid, to construct a canal or canals, drain or drains, from said city to the Savannah river, or such other stream or streams as said board, in the exercise of a sound discretion, may determine, for the purpose of emptying said drain or drains." Manifestly this act did not intend to restrict the board to streams inside the city for the purpose of obtaining an outlet for the city's drainage and sewerage. The city had that power already under the general provisions of its charter. The language of the act makes it plain that the board of health was to have authority to utilize streams beyond the city limits for the purpose indicated. If, therefore, the ditch and culvert which constitute the subject-matter of the plaintiff's grievance had been constructed by the board of health under the general authority given by the act, by an expenditure of money within the regular appropriation, or with the approval of the council if the expenditure was beyond such appropriation, or if they were a part of an extended system of drainage inaugurated by the joint action of the two bodies, there could be little question that the city would be liable in damages to the plaintiff under his allegations.

The evidence shows, however, that the ditch was built by the city council, without the co-operation of the board of health; and that if that body had any connection at all with the construction of the culvert, it was in a very informal and irregular way. The construction of this ditch and culvert was at most only an irregu-

lar exercise of an authority duly conferred. The act provides that when the council and board of health shall agree upon a plan or system of drainage or sewerage, the city authorities shall execute the plan and provide for the expenses of the same. The board of health is merely an agency or instrumentality of the city. The real purpose of the act was to give the city the authority to do this work, and to provide the method by which it was to be done, that is, an extended system of sewerage should be constructed only with the concurrence of both the city council and the board of health, but that ordinary work on the system existing should be done through the instrumentality of the board of health, requiring the approval of the city council only in cases where more than the regular appropriation was needed for that purpose. Now if the city council, the supreme authority in the city, without the formal concurrence of the board of health, actually constructs itself a ditch or drain outside the city, as a necessary and proper part of its system of drainage and sewerage, or if it uses one so constructed in such an irregular way, it by such use ratifies the construction of the same by the board of health in an irregular way, and the city becomes as responsible for damages resulting thereby to private individuals as if the ditch had been built in strict accordance with the method and conditions prescribed by the legislative act. We are aware that there are cases holding that all the conditions precedent to an act must be complied with, or else the city will not be liable ; but the weight of authority, at least of modern authority, is that where a city has authority to do an act, performance in an irregular way, or by a different instrumentality from that prescribed, will not prevent liability from attaching. The trend of modern authority can be gathered from the following : 20 Am. & Eng. Enc. L. (2d ed.) 1201–1202 ; 2 Dill. Mun. Corp. (4th ed.) §§ 968, 972 ; City of Pekin v. Newell, 26 Ill. 320 ; City of Chicago v. Turner, 80 Ill. 419 ; Stanley v. Davenport, 54 Iowa, 463, s. c. 37 Am. Rep. 216, 219 ; Clayton v. Henderson (Ky.), 44 S. W. 667 ; Collensworth v. New Whatcomb, 16 Wash. 224 ; Sherman v. Grenada, 51 Miss. 186 ; Allison v. Richmond, 51 Mo. App. 133 ; Boye v. Albert Lea, 74 Minn. 230 ; Oklahoma City v. Hill, 6 Okla. 114 ; Poillon v. Brooklyn (N. Y.), 4 N. E. 191 ; Mayor v. Sheffield, 4 Wall. 189 ; Hunt v. Boonville, 65 Mo. 620, s. c. 27 Am. Rep. 299 ; Dooley v. Kansas, 82 Mo. 444, s. c. 52 Am. Rep.

380.    See, in this connection, *Hazlehurst* v. *Railroad*, 43 *Ga.* 54, et seq.

8–10. The officers in charge of the affairs of a municipal corporation may select places for the construction of a system of sewerage and drainage, and adopt a plan for such construction, without rendering the city liable in damages for injuries resulting from such selection and from the proper construction of the system. These officers may also, if it is necessary, take or damage property of private citizens in constructing the system of sewerage and drainage, but adequate compensation must be paid for property so taken or damaged.    The same is true of the construction of any public improvement.    *City of Atlanta* v. *Green*, 67 *Ga.* 386; *Moore* v. *Atlanta*, 70 *Ga.* 611; *Roughton* v. *Atlanta*, 113 *Ga.* 948.    If a municipal corporation negligently constructs a system of sewerage or drainage, or negligently maintains one properly constructed, so as to injure private citizens or their property, it will be liable in damages for the injury thus occasioned.    The power to construct and maintain a system of drainage does not carry with it the right to maintain it in such a way as to endanger the health of the inhabitants or injure their property.    The allegations of the plaintiff's petition bring the case within the previous decisions of this court.   See *Holmes* v. *Atlanta*, 113 *Ga.* 961; *Massengale* v. *Atlanta*, 113 *Ga.* 966, and cit.; *Mulligan* v. *Augusta*, 115 *Ga.* 337.    The difficulty arises as to the measure of damages.    The rule on this subject is this:    If the nuisance is not of a permanent character, but such as the city may at will abate, and when abated the injury occasioned by its maintenance will cease, the plaintiff can recover merely the damages which he has sustained within the period prescribed by the statute of limitations for bringing a suit of this character.    But if the nuisance is of a permanent and continuing character, the plaintiff may recover in one action all the damages, past and future, which the maintenance of the nuisance has occasioned and will occasion in the future.    *Reid* v. *Atlanta*, 73 *Ga.* 523 ; *Danielly* v. *Cheeves*, 94 *Ga.* 263; *Holmes* v. *Atlanta*, 113 *Ga.* 961; *Massengale* v. *Atlanta*, 113 *Ga.* 966; *Mulligan* v. *Augusta*, 115 *Ga.* 337.    In the case of permanent injury to the freehold, resulting from the proper construction and proper maintenance of any work of public improvement, the measure of damages is the difference in market value before and after the work was

constructed and maintained. *Moore* v. *Atlanta*, 70 *Ga.* 611 ; *Smith* v. *Floyd County*, 85 *Ga.* 420 ; *City Council* v. *Schrameck*, 96 *Ga.* 426. If the market value of property is increased by a wrongful act of the city, it would still be liable for the actual damages resulting from injuries therefrom to the property. *Farkas* v. *Towns*, 103 *Ga.* 150; *Mayor and Council* v. *Tucker*, 103 *Ga.* 233. The nuisance complained of in this case, that is the improper maintenance of the ditch, is not a permanent one, but rather one which can be abated by the city at any time. The nuisance complained of does not consist in the mere presence of the ditch or of the culvert, but in the manner in which they are maintained　The culvert was constructed to divert the water into the ditch. The nuisance may be abated, then, either by restoring the water to its former flow, or by repairing the ditch in such a way that it will carry off the water which comes into it through the culvert. We do not think, therefore, that this is a case for the recovery of prospective damages resulting from the construction and maintenance of the ditch as a nuisance.

The plaintiff is, however, entitled to recover for all legitimate damages of every kind which he has sustained, at least up to the time that he served his notice of claim upon the city authorities. He can recover for the increased expense to which he has been put in the building of bridges, etc., by reason of the construction and maintenance of the ditch. He can recover whatever actual damages he has sustained by reason of sickness, or by reason of injury to his property, growing out of the maintenance of the ditch in such a way as to make the same a nuisance. In a word, the plaintiff can recover all the actual damages he has sustained by reason of the wrong complained of, on the theory that the ditch as maintained is a nuisance; but he can recover nothing on the theory that the city will continue to maintain the nuisance. If, as matter of fact, it does continue to maintain it, he can bring another action for damages after they have accrued, and do this just as long as the city fails and refuses to abate the nuisance. If the rental value of the plaintiff's premises has been less during the maintenance of the nuisance and by reason of it, this would be a proper element of damage; and the damage to the plaintiff's land caused by caving and washing can also be recovered, the measure of damages being the cost of restoring his land to the condition in

which it was prior to the injury. The plaintiff has a right, however, to recover damages if his property was damaged by the construction of the ditch, even though it was properly constructed and has been properly maintained. If his freehold estate was injured by the construction of the ditch, the measure of damages would be the difference in market value before and after the construction of the ditch. The trial judge was of opinion that injury to the freehold was not a proper element of damage, under the allegations of the petition and the proof offered in support thereof. In this we think he erred. The petition claimed damages on account of diminished market value resulting from injury to the freehold, and also for the actual damages sustained on account of the maintenance of the ditch in such an improper manner as that it became a nuisance. There was evidence to authorize a recovery on both counts. Several of the charges of the court were not in harmony with this view, and a reversal of the judgment refusing a new trial is therefore rendered necessary.

11–12. The petition alleged that the caving of the ditch has impeded the growth and endangered the life of a number of shade-trees which plaintiff " had planted in the enclosure on his premises near said Turknett Springs road." In the notice served upon the city before the suit was filed, damages were claimed on the ground that the caving of the ditch had practically destroyed the shade-trees " set out by the owner in front of his property." The court refused to admit evidence relating to damage to the shade-trees, on the ground that there was a substantial variance between the notice and the petition. We think this was error. The act of December 20, 1899, requires that all persons having claims against municipal corporations, for injuries to person or property, to present "in writing such claims to the governing authority of said municipality for adjustment, stating the time, place, and extent of such injury, as near as practicable, and the negligence which caused the same," before bringing suit against the corporation. Acts 1899, p. 74. This act does not contemplate that the notice shall be drawn with all of the technical niceties necessary in framing a declaration. The purpose of the law was simply to give to the municipality notice that the citizen or property owner has a grievance against it. It is necessary only that the city shall be put on notice of the general character of the complaint, and, in a

general way, of the time, place, and extent of the injury. The act recognizes, by the use of the words " as near as practicable," that absolute exactness need not be had. A substantial compliance with the act is all that is required; and when the notice describes the time, place, and extent of the injury with reasonable certainty, it will be sufficient. See, in this connection, Laue v. Madison (Wis.), 57 N. W. 93; Barrett v. Hammond (Wis.), 58 N. W. 1053; City of Denver v. Barron (Colo.), 39 Pac. 989; McCabe v. Cambridge, 134 Mass 484; Cloughessey v Waterbury, 51 Conn. 405. The petition need not exactly follow the notice, and an immaterial variance between the two as to time, place, or extent of injury will not amount to a fatal variance. We do not think the variance in the present instance was so substantial as to prevent the plaintiff from proving damage to his shade-trees. Doubtless a proper construction of the notice would be that the plaintiff intended to fix the location of the trees on the front portion of one of his lots. At any rate, the city was sufficiently put on notice as to the location to be able to find them without difficulty upon an inspection of the premises, and ascertain whether any injury had been done to them, and, if so, what was its extent. Moreover, the city had a right to waive the notice altogether, as well as its right to insist upon a variance. Foster v. Bellaire (Mich.), 86 N. W. 383. And it would seem that a failure to demur to the petition on this ground, when the notice was attached thereto as an exhibit, would amount to a waiver. The plaintiff being entitled to prove the extent of the injury to the shade-trees, to throw light on the market value of the property after the construction of the ditch, this error resulted in substantial injury to him.

13. The pleadings and the evidence sufficiently raised the question as to whether a portion of the property which the plaintiff claimed had been damaged did not extend over into the public road. If such was the case, the plaintiff could, of course, recover nothing by way of damages to this property. He could acquire no prescriptive right to it, and the court properly charged the jury to this effect. *Norrell* v. *Augusta Railway Company*, 116 *Ga.* 313. This would not, however, affect his right to recover for injuries to other property, and the charge of the court should not have been broad enough to exclude him from recovering for such injuries. Nor do we think the plaintiff could acquire any prescriptive right

against the city to have artificial obstructions erected for the purpose of carrying off the surface-water in front of his property remain in the condition in which they were in when he acquired the property. The city had a right to change such obstructions or substitute other and different obstructions, or take them away altogether, whenever it was necessary for the proper management of its system of drainage and sewerage to do so. No lapse of time would deprive it of this right, though it would, as in other cases, be liable to plaintiff for the amount of damages thereby inflicted upon his freehold estate. The charges on these subjects were substantially correct.

The foregoing disposes of all of the material questions raised by the record. In one ground of the motion for a new trial complaint is made that the court charged the jury that plaintiff could recover nothing on account of the unsightliness of the ditch in front of his property. Proof of this fact might shed some light on the question of diminished market value, and it was competent to introduce evidence as to the character and appearance of the ditch, for this purpose. The court also charged the jury that plaintiff could not recover for any damages resulting from an extraordinary rainfall. This was, under the facts of this case, stated too broadly The plaintiff claimed that when he bought the property there was a ditch in front of it sufficient to carry off all the water which would naturally come into it from either ordinary or extraordinary rainfalls. The jury ought to have been allowed to take into consideration the increased volume of water flowing through the culvert; and if the ditch and culvert were improperly maintained, the plaintiff was entitled to recover for whatever damage this increased flow of water caused, in connection with the improper character of the culvert or ditch, whether the rainfall was ordinary or extraordinary. In other words, if the increased flow of water through the culvert contributed to or increased the damages which would result from an improper maintenance of the ditch or culvert or both, the plaintiff would not be precluded from recovering merely because the rainfall was extraordinary. Let the case be tried again in the light of what is herein laid down.

*Judgment on main bill of exceptions reversed; on cross-bill affirmed. By five Justices.*