## HENDRIX *v.* McEACHERN.

1. Where two city lots adjoin, the lower lot owes a servitude to the higher, so far as to receive the water which naturally runs from it, provided the owner of the latter has done no act to increase such flow by artificial means.

2. After charging the above principle, the court did not err in giving to the jury this instruction: "On the other hand, while the owner of the lower lot is required to receive the natural flow of water from the upper lot, he may take such precautions as may be necessary to control such

Adjoining Landowners, 1 C. J. p. 1231, n. 40.

Waters, 40 Cyc. p. 641, n. 17, 18; p. 645, n. 31; p. 646, n. 32; p. 654, n. 84, 90.

water on his own premises as may appear reasonably necessary for his own protection, and to this end may build a wall on his own land to control the flow of such water on his own premises; provided, however, he does not so build it as to dam or back the flow of water on the upper lot to the injury of its owner. Under such circumstances the defendant could build a wall on his own land to control and receive the natural flow of water from the land of the plaintiff, provided he built it in such way as not to stop the natural flow of the water on land of plaintiff so as to dam or back it on the land of plaintiff. Defendant could not lawfully so build such wall as to prevent the natural flow of the water to run off the land of plaintiff."

3. Under the evidence, a verdict in favor of the plaintiff was not demanded upon any of the issues involved in the case.

No. 5748.   June 20, 1927.   Rehearing denied July 29, 1927.

Equitable petition.   Before Judge Graham.   Pulaski superior court.   November 11, 1926.

*Lawson & Ware,* for plaintiff.   *H. E. Coates,* for defendant.

Hines, J.   Mrs. Maggie E. Hendrix brought her action against W. D. McEachern, to recover a strip of land one foot wide and one hundred thirty-three and one half feet long, lying on the north side of her lot in the city of Hawkinsville, which she alleged McEachern, who was the owner of the adjoining lot, had taken possession of; and for the recovery of damages arising from the erection by the defendant on said strip of a wall, and the filling in by him of his lot, whereby the natural flow of water falling on her lot over the lot of the defendant had been obstructed so that during seasons of heavy rainfall the back part of her lot became flooded, whereby its market value had been greatly diminished. She further alleges in her complaint that her lot lies on higher ground than the lot of the defendant, and that the natural drainage of the surface-water falling upon her lot is toward and upon the lot of the defendant, which is subject to a servitude to receive the natural drainage from her lot, which natural drainage has been interfered with by reason of the erection by the defendant of said wall on the strip of land in controversy.   The real controversy between the parties was over the true boundary line between their lots, over the existence of said servitude, and, if it existed, whether the plaintiff had increased the flow of water from her lot over the lot of the defendant by artificial means, in consequence of which the defendant had erected said wall in order to protect his lot from said increased flow of water.   The jury returned a verdict in favor of the defendant.   The plaintiff moved for a new trial, upon the

formal gronds, and by an amendment excepted to one instruction given by the court to the jury. The court below overruled her motion, and to this judgment she excepted.

1. As the parties own adjoining lots, if the lot of the plaintiff is higher than that of the defendant, the lot of the latter owes a servitude to the lot of the former, so far as to receive the water which naturally runs from it, provided no act of the plaintiff has increased such flow by artificial means. "Where two city lots adjoin, the lower lot owes a servitude to the higher, so far as to receive the water which naturally runs from it, provided the owner of the latter has done no act to increase such flow by artificial means." *Goldsmith* v. *Elsas*, 53 *Ga.* 186; *Mayor &c. of Albany* v. *Sikes*, 94 *Ga.* 30, 35 (20 S. E. 257, 26 L. R. A. 653, 47 Am. St. R. 132); *Farkas* v. *Towns*, 103 *Ga.* 150, 153 (29 S. E. 700, 68 Am. St. R. 88); *Edgar* v. *Walker*, 106 *Ga.* 454 (32 S. E. 582). Such being the law in this State, if McEachern, who owned the lower and servient estate, erected a wall between his lot and that of the plaintiff, and filled in his lot, so that the natural flow of the water from the lot of the plaintiff over his lot was obstructed, whereby the surface-water was caused to accumulate and stand on the lot of the plaintiff, he became, as to her, a wrong-doer and rendered himself liable for any damages which the plaintiff sustained in consequence of his wrongful act. While this is true, the plaintiff, who owned the higher lot, would have no right to concentrate and collect surface-water, by the erection of a garage with a cement foundation and cement approach thereto, and cause the same to be discharged upon the lot of the defendant in greater quantity at a particular locality or in a manner different from that in which the water would have flowed over the lower lot, if it simply ran down upon it from the upper lot by the law of gravitation.

The court charged the jury as follows: "On the other hand, while the owner of the lower lot is required to receive the natural flow of water from the upper lot, he may take such precautions as may be necessary to control such water on his own premises as may appear reasonably necessary for his own protection, and to this end may build a wall on his own land to control the flow of such water on his own premises; provided, however, he does not so build it as to dam or back the flow of water on the upper lot to

the injury of its owner. Under such circumstances the defendant could build a wall on his own land to control and receive the natural flow of water from the land of the plaintiff, provided, he built it such way as not to stop the natural flow of the water on land of plaintiff so as to dam or back it on the land of plaintiff. Defendant could not lawfully so build such wall as to prevent the natural flow of the water to run off the land of plaintiff." To this charge the plaintiff excepts, upon the grounds: (a) that it incorrectly states the controlling issue of law, which is "that where two city lots adjoin, the lower lot owes a servitude to the higher, so far as to receive the water which naturally runs from it, provided the owner of the higher lot has done no act to increase such flow by artificial means;" (b) that said charge was misleading, as the defendant was bound to receive all the water which naturally flowed upon his lot from the lot of the plaintiff, and had no right in any way to protect his land from such natural flow of water, or to control the same; and (c) that the language of said charge, "he may take such precautions as may be necessary to control such water on his own premises as may appear reasonably necessary for his own protection," is vague, indefinite, uncertain, and misleading, and incorrectly stated the law controlling one of the issues in the case, for the reason that in no event did the defendant have a right to do anything which would in any way interfere with or control the natural flow of water over his lot from the lot of the plaintiff. We do not think this instruction was incorrect for any of the reasons assigned by the movant. Before giving such instruction the court had given the jury the proper rule governing the servitude which a lower lot owes to a higher lot, as to surface-water flowing from the latter to the former. In the instruction complained of, the court told the jury that the defendant could take such reasonable precautions for his own protection as might be necessary to control such water on his own premises, and to this end might build a wall on his own land, provided he did not so build it as to dam or back the flow of water on the lot of plaintiff, and provided he built it in such a way as not to stop the natural flow of the water from the lot of the plaintiff so as to dam or back it on her land, and so as not to prevent the natural flow of the water from the lot of the plaintiff. We think the owner of the servient lot could take such precautions as to con-

trol the flow of the water over his own lot. The court distinctly instructed the jury that he could not build this wall if it backed the water upon the lot of plaintiff, or if it interfered with the natural flow of the surface-water from the plaintiff's lot over his lot. So we are of the opinion that this instruction of the court to the jury was not subject to any of the grounds of objection urged by the plaintiff.

2. It is urged by counsel that under the evidence a verdict for the plaintiff was demanded upon the issue whether or not the defendant had interfered with the natural flow of the surface-water from the lot of the plaintiff over his lot. It may be conceded that the erection of the wall by the defendant may have to some extent interfered with the natural flow of the surface-water from the plaintiff's lot over that of the defendant. But in order to entitle the plaintiff to recover upon this issue, it was incumbent upon her to show that the defendant had interfered with the natural flow of the surface-water from her lot over his lot, and that she had done no act to increase the flow of this water. There is in the record evidence which tends to show that the plaintiff erected in the southwest corner of her lot a garage, with a cement foundation and driveway, which interfered with such natural flow of water from her lot over the defendant's lot, and caused said water to be discharged at another place onto the lot of the defendant in greater quantity than it would have flowed but for the erection of such structure. So it does not appear that upon this issue a verdict was demanded for the plaintiff; nor can we say that a verdict on the other issue in the case, that is, as to the true boundary line between these two lots, was demanded by the evidence in favor of the plaintiff. This being so, the court did not err in overruling the formal grounds of the motion for new trial.

*Judgment affirmed. All the Justices concur.*