THE CITY OF ATLANTA *v.* WARNOCK.

1. The municipal government of Atlanta, though invested by statute with plenary powers over the subjects of streets, sewers, drainage, water supply and sanitation, has no right to create and permanently maintain a nuisance dangerous to health and life, which nuisance consists of openings called manholes in a sewer located in a public street contiguous to the dwelling of a citizen, the manholes being allowed to emit poisonous gases in large quantities through perforated covers placed over them. This is true at least where the dangerous character of the nuisance results, in all probability, not from defects inherent in the general system, but from defective execution of the system in failing to adapt it to local conditions, such as steep grade, in the particular street in which the unwholesome sewer is constructed and maintained.

2. There was no abuse of discretion in granting the temporary injunction, enjoining the city "from continuing said manholes in such condition as to allow the escape of noxious gases." In the light of the pleadings and the evidence, the terms of the order were sufficiently definite and specific.

November 9, 1892.

Before Judge MARSHALL J. CLARKE. Fulton county. June 22, 1892.

Mrs. Warnock brought her petition for injunction against the City of Atlanta, alleging as follows: The city has opened two manholes, two feet in diameter, with perforated tops, into the large sewer extending along Wheat street, both within a few feet of petitioner's property which fronts 290 feet on Wheat street and 150 feet on Courtland street, where she and her family have resided for twelve years, one of the manholes being on the corner of the two streets and the other on Wheat street, with no trap or obstruction to prevent the foul sewer-gas from coming up through the same. This gas is exceedingly offensive and dangerous to the health and lives of petitioner and the other occupants of her premises. It comes up in great volumes, especially after a short dry spell, and is distressingly troublesome and annoying in warm weather, driving petitioner

and her family and friends from the verandah of her house, compelling her to shut the windows in the warmest weather, and making life unbearable. She has made frequent applications to the various authorities and officers of the city, the mayor, sanitary inspector, police, etc., all with no effect. A petition to the mayor and general council, signed by many of the residents of the street, was made, but was not acted on, or lost sight of in some way. She is satisfied that she can get no relief outside of the court. It is not possible for her to be compensated in damages for the nuisance; to attempt to seek redress in that way would result in great delay, during which time she would be suffering a discomfort and annoyance which cannot be made the subject of pecuniary compensation; and she would be involved in a multiplicity of vexatious and harassing suits. The way to abate the nuisance is to place a solid instead of a perforated top on the manhole. The city has such solid tops, and in a great many instances has put them on in the place of the perforated tops, where complaints have been made in similar instances in various parts of the city; but it has neglected to put them on so as to protect petitioner, and refused to allow her to stop the holes in the top of the manhole. She prays "that the State's writ of injunction do issue, restraining the said defendant from keeping said mouths of said manholes open, and from continuing said nuisance in front of your petitioner's said premises as aforesaid."

The city demurred generally, and answered as follows: The Wheat street sewer was built in 1888–89, as part of the system of sewers adopted in 1888 upon the advice of the board of health of the city, of the city engineer, and of Rudolph Hering, an eminent sanitary engineer of New York, who is consulting engineer of the City of Atlanta with reference to its system of waterworks and sewerage, and whose report was filed with

the city council in December, 1890. In 1888, 1889 and 1890, the city engineer and commissioner of public works, in doing sewer construction on Wheat and other streets, acted under the advice of Hering to the same effect as that contained in his report, which was only filed after the completion of detailed surveys of the sewer system of the city, the making of which surveys necessarily consumed a great deal of time. The plan of ventilating main sewers through perforated covers to manholes at street crossings, and at substantially regular distances between such crossings, is an integral and necessary part of the sewer system so advised and adopted, and since conformed to in the construction and operation of sewers. If the air escaping through these perforated covers is sometimes offensive, as defendant does not deny, this is to some extent unavoidable; and the air thus escaping into the open atmosphere is much less dangerous than if forced to find an outlet through the sewer connections in the houses of the people, and is less offensive than if permitted to escape, as formerly, at the gutter openings along the sidewalks. A system of sewerage with as frequent and copious flushing with water as is practicable, is universally conceded to be the best practicable agent for the disposition of sewerage matter which must be carried beyond the city limits for the protection of the lives and health of the people. Defendant is constantly endeavoring, by flushing, the use of disinfectants, and otherwise, to lessen whatever annoyances result from the use of the sewers with the present inadequate water supply which defendant is preparing to enlarge and render abundant at great expense. But plaintiff's property is not so situated as to entitle it to exceptional treatment by the city; and this matter was fully inquired into and maturely considered in 1890, upon a petition signed by the plaintiff and others, by the sewer committee and the board of health, with the

result that the relief now prayed for was not granted her. For the court to order the city to put solid coverings over the manholes near plaintiff's property, would involve the assumption and exercise by the court of discretion and authority to change the plan of ventilating the whole system of main sewers in Atlanta, which discretion the law vests in the city authorities. The system of sewers in the city is being extended, enlarged and improved as rapidly and well as the revenues of the city government will permit from year to year; and the chief need in this department of the public works is, not additional immunities to those already having the benefits of sewers and water connections, but the furnishing of such facilities to the people in sections of the city now destitute of them. Still the enlargement of the system has a beneficial effect upon sewers already built, and lessens the annoyance resulting from their ventilation.

At the hearing there was much evidence which need not be set out in this report, certain material facts appearing therefrom being stated in the opinion. The court "ordered that the defendant be enjoined from continuing said manholes in such condition as to allow the escape of noxious gases." The city made the following assignments of error:

1. The judgment invades the province of the mayor and council of the city, in the exercise of their charter powers, to adopt and construct a system of sewers and drains according to their discretion, and is erroneous in assuming that the escape of gases from the sewer under the circumstances described in the testimony, and permitted in this manner and for the reasons therein made to appear, constitutes a nuisance in law. The question whether the sewers in the city should be ventilated, and the best manner of sewer ventilation attainable in the city, is not for decision by the superior court, but rather

for settlement by the mayor and council of the city under its charter authority, and in the light of the needs, resources, population, water supply, and natural drainage of the territory of the city.

2. The petition prayed for a mandatory injunction requiring the city to place solid covers over the manholes. To have granted such injunction would have given the measure of relief prayed for, and would have been a judgment reasonably certain in its terms. But the judgment excepted to, construed in the light of the pleadings and evidence, is too vague and uncertain to be understood and acted upon by the city with due regard to its charter powers and obligations to protect the health of its citizens, and with becoming respect to the judgment of the court.

JOHN B. GOODWIN and JAMES A. ANDERSON, for plaintiff in error.

HALL & HAMMOND, contra.

BLECKLEY, Chief Justice.

1. There was evidence indicating that the system of sewerage adopted by the city was a good and safe one, and that the nuisance complained of or its dangerous character did not result from any defect inherent in the system itself, but was due to defective execution in failing to adapt the system properly to the steep grade of the street in which this particular unwholesome sewer was constructed and is maintained. There was ample evidence that poisonous gases in large quantities were emitted through the manholes in this sewer, which were dangerous to health and life, and that the plaintiff, whose residence was on adjacent premises, was subjected to special injury and annoyance thereby. If such a nuisance owed its origin not to the general system of which this sewer was a part, but to a defective execution of the same at this particular place, there can be

no doubt of the power to restrain the city from continuing the nuisance, notwithstanding the municipal government is by statute invested with plenary powers over streets, sewers, drainage and sanitation. Whether a nuisance attributable to a mistaken exercise of the legislative power of the city in adopting an unsafe or unwholesome system of sewerage might be the subject-matter of injunction, is a question on which no decisive opinion need be expressed,—the strong probability being that the nuisance now under consideration had a different origin.

2. In granting the temporary injunction restraining the city " from continuing said manholes in such condition as to allow the escape of noxious gases," the presiding judge did not abuse his discretion; and the terms of the order were sufficiently definite and specific, construing them in the light of the pleadings and the evidence. The city officials, if they honestly and conscientiously endeavor to comply with the injunction, will have no real difficulty in ascertaining to a reasonable certainty what manholes they are to deal with and what gases are to be kept from escaping through the same. Any affected ignorance on this subject is not to be anticipated.　　　　　　　　　　　　*Judgment affirmed.*