BELL *et al. v.* MAYOR AND ALDERMEN OF SAVANNAH.

ATKINSON, J. 1. Although municipal authorities may have plenary power in the matter of collection, removal, and disposition of garbage, yet they can not lawfully create in connection therewith a nuisance dangerous to health or life; and when necessary and proper, a court of equity will, at the instance of a citizen suffering special injury therefrom, enjoin against the maintenance of the same. *Mayor &c. of Waycross v. Houk,* 113 *Ga.* 964 (39 S. E. 577), and citations.

2. It was erroneous to dismiss the petition on demurrer.

*Judgment reversed. All the Justices concur.*
JANUARY 21, 1913.

Equitable petition. Before Judge Charlton. Chatham superior court. November 16, 1911.

E. W. Bell and Eldred Simkins instituted an action against the Mayor and Aldermen of the City of Savannah to enjoin an alleged nuisance. On demurrer to the petition the case was dismissed, and the plaintiffs excepted. The petition alleged the following in substance: The plaintiffs owned two designated lots in Savannah, a city of sixty-five thousand inhabitants, on which were located sixty-two one-story, framed, double-tenement houses and one storehouse. They are located in a thickly settled community, and valuable for renting, for which purpose they are used. On property bordering that of the plaintiffs and in close proximity to the tenements thereon the defendant is maintaining what is known as the "city garbage dump," being a place that is used in the following manner: The garbage of the city, consisting of dead animals and decayed vegetable and animal matter in various forms, is collected throughout the city during all of each day, and transported in uncovered scavenger wagons and carts, and assembled at the "city dump." This dump is equipped with railroad tracks, and on these open cars are left standing all day for the purpose of receiving garbage carried there by the wagons and carts. The cars, wholly or partially loaded with garbage, are kept standing on such tracks during practically every day of the year. Between midnight and sunrise of each night the loaded cars of garbage are transported from the "city dump" over the tracks of a street-car company along designated streets to a point beyond the city limits. During the preceding year the amount of garbage so handled was 2,040 carloads. The method of collecting, transporting, handling, and removing the garbage, and the maintenance of the "city dump,"

are carried on in disregard of the public health, and particularly of the health, comfort, and peace of mind of petitioners' tenants. The collection at one point of so much miscellaneous garbage, and keeping it there for so many hours, make the "city dump" a place of assemblage and propagation of enormous quantities of. flies, mosquitoes, and other germ-bearing insects, the presence of which endangers the health of the people generally, and that of petitioners' tenants in particular. The immediate proximity of the "city dump" and the manner of using it causes a large portion of petitioners' houses to remain untenanted. The maintenance of the "city dump" and the method of using it is a continuous nuisance, and a continual source of injury and damage to plaintiffs. The prayers were, that the defendant be required to show cause why "the maintenance, use, and operation of said dump" should not be restrained and enjoined, "allowing to the defendant, however, a reasonable time for the making of other and more suitable arrangements for the disposition of the garbage of the city;" and that the defendant be permanently enjoined from "maintaining, using, and operating said city dump."

*Hitch & Denmark,* for plaintiffs.

*H. E. Wilson* and *David C. Barrow,* for defendant.