8996. CITY COUNCIL OF AUGUSTA v. CLEVELAND.

1. While ordinarily a municipality is not liable for injuries caused by negligence of employees of its board of health when engaged in work

connected with the preservation of the public health, an exception to this rule occurs where there is negligence on the part of such employees, who are paid directly by the city and not by the board of health, in cleaning out a part of a sewer and leaving a heavy iron lid to an opening in the sewer in such a position upon a sidewalk as to create a dangerous defect or obstruction in the sidewalk, in consequence of which one not chargeable with negligence is injured.

2. There is no reversible error in any of the excerpts from the charge of the court, as complained of in the special grounds of the motion for a new trial, when considered in the light of the charge as a whole.

3. The verdict was authorized by the evidence, and the court did not err in refusing to grant a new trial.

DECIDED APRIL 4, 1919.

Action for damages; from city court of Richmond county—Judge Black.  June 9, 1917.

*Isaac S. Peebles Jr.,* for plaintiff in error.

*Alexander & Lee,* contra.

BROYLES, P. J.  The first headnote alone needs elaboration The ruling therein stated is in accord with the decision of the Supreme Court in this case, rendered February 13, 1919, in answer to questions certified by this court.  148 *Ga.* 734 (98 S. E. 345). That decision follows:

"1.  The duty of a city to maintain its sewerage-drainage system in a good working and sanitary condition is a governmental function.

"2.  Such maintenance of a sewerage system has reference to the preservation of the public health.

"3.  This court will take judicial notice of that fact.

"4.  This court will also take judicial cognizance of the fact that the cleaning out of an essential part of a city's sewerage-drainage system for the purpose of keeping it open and unclogged by dirt, sand, or other foreign substances, so that it can properly perform its functions as a part of the system, is a necessary work in a proper maintenance of the system, and is a work connected with the preservation of the public health.

"5.  Negligence on the part of employees of the board of health of a city, who were paid by the city, in cleaning out a part of the sewer and leaving a heavy iron lid to an opening into the sewer in such a position as to create a dangerous defect or obstruction in the sidewalk, in consequence of which one not chargeable with negligence was injured, would render the city liable to the injured party."

"The Court of Appeals has certified the following questions upon which it desires instruction:

'1. Is the duty of a city to maintain its sewerage-drainage system in a good working and sanitary condition, so as to prevent it from becoming or causing a nuisance, a governmental or a ministerial function?

'(*a*) Is such maintenance connected with or has it reference to the preservation of the public health?

'(*b*) Is the fact that such maintenance is connected with or has reference to the preservation of the public health so well known that this court can take judicial cognizance of it?

'(*c*) Can this court take judicial cognizance of the well-known fact that the cleaning out of a 'sand-trap'—an essential part of a city's sewerage-drainage system—for the purpose of keeping it open and unclogged by dirt, sand, or other foreign substances, so that it can properly perform its functions as a part of the system, is a necessary work in the proper maintenance of the system, and is a work connected with the preservation of the public health?

'2. A "sand-trap" forming a part of the sewerage-drainage system of the City of Augusta was being cleaned out by the employees of the board of health of the city by removing therefrom sand and dirt. The powers and duties of the board of health and its employees, and their relations to the city, are fixed by the act of the General Assembly of Georgia creating the board (Acts 1880-1, p. 365). While the men cleaning out this sand-trap were employees of the board of health of the City of Augusta, it is inferable from the evidence that they were paid by the City of Augusta. The sand-trap was on the edge of a sidewalk near the curbing, and the employees of the board of health, for the purpose of cleaning out the sand-trap, removed its iron lid (which was about 3 1/2 or 4 feet square and weighed 200 or 250 pounds, and which, when the trap was closed, formed a part of the surface of the sidewalk used by pedestrains), and propped the lid up at an angle on the edge of the sidewalk by means of a steel bar some 2 1/2 or 3 feet long, while they were engaged in cleaning out the trap. While this work was being done, a boy 7 years old, who was upon the sidewalk, walked up to the trap to see what was going on, and accidentally struck with his foot the steel bar which supported the lid, thereby knocking the prop down and causing

the lid to fall upon and break his leg. Under these circumstances, was the city in the performance of a governmental or a ministerial function; and was it liable for the negligence of the employees of the board of health (if they were negligent under the facts' of the case) in improperly and insecurely propping up the lid, and in failing to warn the boy of his danger when approaching it?

"1-3. We are of the opinion that the duty of a city to maintain its sewerage-drainage system in a good working and sanitary condition is a governmental function. That such maintenance is connected with and has reference to the preservation of the public health is so well known and so generally recognized that courts will take judicial cognizance thereof. It is unnecessary to cite authorities, either decisions of courts or text-books, to show what facts or classes of facts courts will take judicial notice of, in order to demonstrate that judicial notice will be taken of the fact that the sewerage system has a direct connection with and relation to the health of the inhabitants of the municipality. We will, however, call attention to the case of *Townsend* v. *Smith*, 144 *Ga.* 792 (87 S. E. 1039), in which it appears that this court took judicial cognizance of the fact that 'the prevention of an infectious malady which, unless checked, would become general among the cattle of a given county and thereby render the flesh of such cattle and milk of cows diseased, unwholsome, and unfit for food, was a matter affecting the health of the people of the community where this disease appeared.' The removal of garbage of all kinds, the prevention of the escape of noxious vapors and odors, the cleanliness of the persons residing in a city, are all to a large extent dependent upon the maintenance of a sewerage-drainage system. It follows from what is here said, under the authority of several of our decisions, that the maintenance of the sewerage and drainage system of a city in a good working and sanitary condition is a governmental function. This conclusion is in accordance with what was said in the case of *Love* v. *Atlanta*, 95 *Ga.* 129 (22 S. E. 29, 51 Am. St. R. 64), and the other cases decided by this court. *Watson* v. *Atlanta*, 136 *Ga.* 370 (71 S. E. 664). See also 6 McQuillin, Mun. Corp. § 2669. In answering the question in regard to the sewers and drainage system of a city, we have assumed that the system referred to is not one operated for profit, and that no substantial charges are made for the ordinary use, enjoyment, and benefits of the system.

"4. It will be seen from what we have said above that an affirmative answer should be given to subdivision (*c*) of the first question, in the form in which that question is submitted. If the question had been propounded as to whether a court would take judicial cognizance of what a sand-trap is, a different question would have been presented. But where the sand-trap is defined as an essential part of the sewerage system, then it follows from what we have previously stated that the keeping of it open and unclogged by dirt, sand, or other foreign substance, so that it could properly perform its functions as a part of the system, is a necessary part of the proper maintenance of the system, and has, therefore, a natural connection with the preservation of the public health.

"5. While it is one of the governmental functions and duties of a city to effectively maintain its sewerage system, and while, under the authority of the decision in *Love* v. *Atlanta,* supra, and the cases laying down the same doctrine as there stated, it follows that if, in the exercise of such functions and the discharge of the duties devolving upon the department of the city government having charge of the matters relating to the public health, a private citizen is injured by the negligence of one of the city's servants in and about such work, no right of action arises against the city, nevertheless that doctrine must not be allowed to destroy the other equally well-established doctrine, that if a city negligently and tortiously allows obstructions to remain in its streets or sidewalks, or negligently fails to repair defects in a sidewalk or street, and a citizen in the exercise of due care is injured in consequence of such act of negligence upon the part of the city, there can be a recovery therefor against the city. Each of these two doctrines must be given effect, and has been given effect. In the case of *Mayor etc. of Savannah* v. *Waldner,* 49 *Ga.* 316, it was said: 'It is the duty of a municipal corporation, vested by law with authority over the streets, whilst dangerous works, such as sewers, etc., are being constructed across a street, to have proper precautionary measures taken to prevent accidents to passengers during such construction, whether the same is being done by the corporation through its own servants, or by contract, or by subcontractors under a primary contractor.' The defect in the street which was charged to be negligent and tortious conduct in the

case just cited consisted in leaving open 'a ditch or sewer across the street.' See also *Mayor etc. of Savannah* v. *Spears,* 66 *Ga.* 304. In the case of *Kea* v. *Dublin,* 145 *Ga.* 511 (89 S. E. 484), it was said: 'Although municipal authorities may have plenary power in the matter of collection, removal, and disposition of garbage, yet they can not lawfully create, in connection therewith, a nuisance dangerous to health or life; and where such a nuisance is created and its effect is specially injurious to an individual by reason of its proximity to his home, he has a cause of action for damages. *Bell* v. *Mayor etc. of Savannah,* 139 *Ga.* 298 (77 S. E. 165).' See also *Mayor etc. of Savannah* v. *Houk,* 113 *Ga.* 963 (39 S. E. 577); *Williams* v. *Washington,* 142 *Ga.* 281 (82 S. E. 656, L. R. A. 1915A, 325 Ann. Cas. 1915B, 196); *Langley* v. *Augusta,* 118 *Ga.* 590 (45 S. E. 486, 98 Am. St. R. 133); *Mayor etc. of Americus* v. *Chapman,* 94 *Ga.* 711 (20 S. E. 3); *Cornelisen* v. *Atlanta,* 146 *Ga.* 416 (91 S. E. 415). Consequently the last question propounded by the Court of Appeals should be answered in the affirmative."

The evidence in this case authorized a finding that the employees of the board of health of the City of Augusta were paid directly by the city, and not by the board of health, and that they were negligent in propping up, on the sidewalk, a heavy iron lid of a sand-trap of a sewer, in such a way that it fell upon the sidewalk when the prop was accidentally struck by the foot of a child, and that they thereby created a dangerous obstruction upon the sidewalk, in consequence of which the injuries sued for were sustained; and that the plaintiff, a boy 7 years old, had exercised the "due care" required of a child of such tender years under the circumstances.

Under these facts and the foregoing decision of the Supreme Court, the City of Augusta was liable in damages to the plaintiff for the injuries sued for.

*Judgment affirmed. Bloodworth and Stephens, JJ., concur.*