## GEORGIA POWER COMPANY *v.* KELLY *et al.*

No. 11037. FEBRUARY 10, 1936. REHEARING DENIED MARCH 27, 1936.

Judges Graham, Gardner, and Worrill were designated for this case instead of disqualified Justices of the Supreme Court.

*Colquitt, Parker, Troutman & Arkwright, Hull, Barrett & Willingham,* and *Phillips & Abbot,* for plaintiff.

*M. C. Barwick,* for defendants.

GRAHAM, Judge. This case arose on petition of the Georgia Power Company, filed on July 14, 1931, against T. B. Kelly, in which it was alleged that the petitioner owned and was operating an electric transmission line running from Augusta through Wrens, Louisville, and Wadley, and was supplying electric current, power, and lights to said towns and other towns in the section, and that Kelly was threatening to destroy said line at a point between Louisville and Wrens by entering upon the land and moving the poles and guy wires supporting them, the effect of which would be to stop the light and power service and do irreparable damage to the petitioner. It prayed for injunction restraining Kelly from in any manner interfering with the lines.

T. B. Kelly answered and admitted that he threatened to remove the electric line of the Georgia Power Company where it crossed his property. By way of cross-bill he alleged that he was the owner of a certain portion of the land on which said line was erected; that the plaintiff refused to condemn his land for the use of said line, and insisted on taking it for the uses aforesaid without compensation to him for its value; and that to allow the plaintiff to continue to string its poles and wires across his land was a continuing trespass from day to day. R. N. Whigham was the holder of the legal title to said land under a security deed, to which deed the defendant's title was subject. He prayed that Whigham be made a party to the cause, and that the plaintiff be enjoined from continuing the trespass, and be required, in the absence of condemnation proceedings, to remove the poles, guy wires, and transmission lines from his property. Whigham was made a party to the cause, and answered, joining with Kelly in the prayer for relief in the cross-bill. The case was submitted to the judge without a jury, on the following agreed statement of facts:

On April 1, 1926, the Augusta-Aiken Railway and Electric Corporation, a predecessor in title of the plaintiff, together with the Board of Roads and Revenues of Jefferson County, the City of Louisville, and the City of Wrens, joined in a petition to the State Highway Department of Georgia for permission for said company to erect and maintain the electric transmission line involved in this

suit, along and within the outer limits of the highway right of way extending from Wrens to Louisville, Georgia, a distance of approximately fifteen miles; and on April 3, 1926, by resolution duly adopted, the State Highway Department granted such permission, and so notified its division engineer by letter dated April 9, 1926, who in turn notified the Augusta-Aiken Railway and Electric Corporation, by letter and memorandum dated respectively April 10 and 12, 1926. Pursuant to said permission the Augusta-Aiken Railway and Electric Corporation, at an expense of approximately $50,-000, constructed said electric transmission line along the outer edge of the said highway, within 25 feet from the center line thereof, where it abuts on the property of the defendant, and upon land included in a deed to the State Highway Department from defendant's predecessor in title, Peter G. Grant. While the poles of said transmission line stand within 25 feet of the center of the paved highway, some are located outside of any actual grading of said highway by the county or the State Highway Department, and some stand inside of an enclosed pasture of the defendant. Thereafter, by warranty deed dated July 27, 1926, duly recorded, the Augusta-Aiken Railway and Electric Corporation conveyed said transmission line, with others, and all rights, powers, titles, franchises and privileges thereunto belonging or appertaining, to Georgia-Carolina Electric Company, which in turn, by warranty deed dated December 8, 1928, duly recorded, conveyed the same to the Georgia Power Company, which now owns and operates the same. Said electric transmission line from Wrens to Louisville is used to supply electric current for power and light to the towns of Louisville and Waynesboro, for municipal purposes, and to the public generally, and is necessary to enable the Georgia Power Company to perform its duties to the public, it being a public-service corporation under the laws of the State of Georgia, with its principal office and place of business in Fulton County. Subsequently to said action by the State Highway Board, Peter G. Grant, a predecessor in title of the defendant in this suit, conveyed to the Highway Board a strip of land for a right of way which included the land on which said transmission line is located, by warranty fee-simple deed dated February 19, 1927, duly recorded, a copy of which is attached to the agreement of facts. Thereafter, by deed dated March 27, 1929, duly recorded, Wassell Randolph, as trustee

in bankruptcy for Peter G. Grant, conveyed the land in controversy to the defendant Kelly. And by deed dated December 7, 1929, duly recorded, J. A. Stiles, as administrator of Peter G. Grant, also conveyed said land to Kelly. Thereafter, by deed dated June 7, 1930, duly recorded, Kelly conveyed the land in controversy to secure a debt to R. N. Whigham, who now holds the legal title as such security.

Upon trial of the case the court found in favor of the defendant, as follows: "This case arose by a petition on the part of the plaintiff seeking to enjoin the defendant from removing certain poles and wires on land, title to which was claimed by the defendant. The case was tried before me, without the intervention of a jury, upon an agreed statement of facts. In deciding the issue between the parties, two main questions are involved. First, assuming that the defendant has title superior to the plaintiff, can he by ejectment proceedings, or otherwise, cause the poles and wires of the plaintiff to be moved from his land, where there has been no condemnation proceedings, and a refusal on the part of the plaintiff to condemn and pay for the same? Without enlarging upon it, or citing authorities, I am of the opinion that in such circumstances the plaintiff can be required to vacate the property. Second, is the title of the plaintiff, by virtue of the deed from the defendant's predecessor in title and the agreement with the State Highway Department, superior to the defendant's title; that is, does the State Highway Department hold fee-simple title, or merely an easement? Considering the entire deed, the consideration named, the recitals in the deed, the purpose for which the deed is made, the court arrives at the conclusion that the conveyance named conveys only an easement, and not the fee-simple title. Having reached these conclusions, it is the judgment of the court that the defendant recover the premises in dispute, and that the temporary injunction heretofore granted against the defendant be and the same is hereby dissolved. Due to the fact that this plaintiff is a public-service corporation, the judgment this day granted will be held in abeyance for thirty days from this date, and at that time, in the absence of an effort on the part of the plaintiff to condemn the defendant's property, this judgment has full force and effect." A motion for new trial was made by the plaintiff, complaining, on general grounds, that the finding of the court was contrary to law

and evidence, and by amendment were added other grounds not necessary to set out; which motion was overruled. The plaintiff excepted to that judgment.

This case is not complicated. It is well settled, in reference to railroad companies with the right of eminent domain, that where the company has entered into actual possession of land necessary for the corporate purposes, whether with or without the consent of the owner, by constructing and operating its line of road thereon, a subsequent purchaser of the land takes it subject to the burden of the railroad, and has no right of action against the company for the value of the land so appropriated, unless such right is expressly conveyed in the transfer. *Green* v. *South Bound Railroad Co.,* 112 *Ga.* 849 (38 S. E. 81) ; Roberts *v.* Northern Pacific R. Co., 158 U. S. 1 (15 Sup. Ct. 756, 39 L. ed. 873). It is also held that where a railroad company enters upon land and constructs its road without compensation to and without authority from the owner, and the owner allows the land to be so taken without legal opposition, and acquiesces in the unlawful taking and consequent appropriation of the property to a great public use until the same has become a component part of the property required by the railroad to perform its public duties, such owner will be deemed to have waived his right to retake the land or to have the operation of the road enjoined. Roberts *v.* Northern Pacific Co., supra; Northern Pacific R. Co. *v.* Smith, 171 U. S. 260 (18 Sup. Ct. 794, 43 L. ed. 157) ; *Griffin* v. *Augusta & Knoxville Railroad,* 70 *Ga.* 164; *Atlanta, Knoxville & Northern Ry. Co.* v. *Barker,* 105 *Ga.* 534 (31 S. E. 452) ; *Charleston &c. Railway Co.* v. *Hughes,* 105 *Ga.* 1 (30 S. E. 972, 70 Am. St. R. 17). Electric and power companies serving the public have the right of eminent domain. The rule in reference to railroads in taking land for the construction of the road and serving the public is applicable to electric and power companies in acquiring land for the construction and operation of its lines to serve the public. To distinguish between the rights of the railroads and electric and power companies in reference to such would be a distinction without a difference.

This court does not seem to have had the exact question before it; but the Supreme Court of California, dealing with a situation similar to this case, laid down in a well-considered opinion, citing other authorities, what appears to be the correct rule in reference

to electric and power companies in cases like this, where the owner knowingly and without legal objection permits the company to appropriate his land necessary to its *corporate purposes,* as follows: "The owner of a fee of a highway who permits an electric power company to construct its line along the highway, without bringing an action to prevent it until after the public service has begun, will be granted damages only for the invasion of his rights, and can not require removal of the line." Gurnsey *v.* Northern California Power Co., 160 Cal. 699 (117 Pac. 906, 36 L. R. A. (N. S.) 185). This is a reasonable rule, and sound in principle. It does not proceed in the interest of the company unlawfully appropriating the land, nor on the ordinary theory of estoppel as where a landowner stands by and without warning sees another in good faith place expensive improvements on the premises. A public utility company, having the right of eminent domain, that knowingly takes land without lawful method for its corporate purposes, could hardly be said to be acting in good faith; and it is difficult to find estoppel working against the owner in favor of the company under such circumstances. The operation of the rule has for its basis more than ordinary estoppel. It works for the good of the public. A public utility company has the right to acquire land necessary for its corporate purpose. Such may be acquired by purchase, by consent of the owner, or by condemnation, but can not lawfully be taken against the consent of the owner without compensation. The right to the owner, by whatever method the land is taken, is compensation, which right he may expressly or by inaction waive. He may by inaction waive his right to the land. Where electric and power lines are established that furnish light and power to the public, all alike, including business and industry of all kinds, the factory, shop, store, transportation, the citizen, private and corporate, church and school, and the home itself, become dependent on the service for their individual and general welfare. If a landowner stands by and permits, without legal objection, a public utility company to appropriate his land to its necessary corporate use until such becomes a necessary and constituent part of its service to the public, and the rights of the public intervene to such extent that to oust the company would interrupt the service and deny it to the public, the landowner, not for the protection so much of the company but for the benefit of the public, will be estopped

from recovering the land in ejectment or from enjoining its use for the service, but will, if he moves in time, be remitted to an appropriate action for damages. The rule is not unfair to the owner of the land. If the land be taken without his consent and without condemnation, a right of action accrues to him against the company. His measure of damage and the amount of his award is the same, whether the land be acquired in condemnation proceedings timely and properly instituted, or whether the land be illegally appropriated and the compensation be fixed in an action against the company for the unlawful taking. The only difference to the landowner is one of remedy. The medicine is not the same, but the cure is equally effectual; and the landowner in either event has his remedy without interrupting the service, to the inconvenience of the social and business life of the community. The only effect on the landowner is that by his own inaction he deprives himself of his remedy by injunction or ejectment, but the remedy afforded him is adequate.

In the case at bar, the defendant's predecessor in title, after the plaintiff with the consent of the Highway Department had constructed its power line over the land and on the right of way of the road, and was actually using the same as a constituent part of its line in the public service, conveyed the land in question to the State Highway Department; and the defendant, a subsequent purchaser, was not entitled to recover the land or to maintain an injunction against the plaintiff to prevent operating its line in the public service. On the other hand, under the circumstances of the case, the defendant did not have the right to remove the line from the premises or to interfere with the service, as threatened by him. This ruling is not in conflict with the opinion of this court in *Donalson* v. *Georgia Power & Light Co.*, 175 *Ga.* 462 (165 S. E. 440), which we are requested to review and overrule. For the purposes of the present case we do not find it necessary to consider the request. The *Donalson* case is easily distinguishable. The cases do not stand on the same footing. The *Donalson* case was brought against the power company by the executor of the owner of the land, to recover the land on which the power company, in the absence of the owner and without condemning, had constructed its line. The owner of the land had not acquiesced in the building of the line across his land, nor was this done

with his consent or knowledge. After the land was so unlawfully taken, the owner had not conveyed it to the city for street purposes. Under such circumstances it was held that ejectment would lie. The facts of this case are unlike the circumstances of the *Donalson* case. In this case the cross-action was not brought by the owner of the land or by his executor, but was filed by a successor in title to the owner of the land at the time it was appropriated by the power company. Moreover, the predecessor in title of the defendant, after the plaintiff had appropriated the land and constructed its line thereon, the same being on the right of way of the public highway, had, while he held title to the land, conveyed same to the State Highway Department. This case might be further distinguished from the *Donalson* case, but it may be seen from the foregoing observation that the holding we now make is not out of harmony with that decision.

In this decision we have not overlooked the cases of *Remshart* v. *Savannah & Charleston R. Co.*, 54 *Ga.* 579, and *Gammage* v. *Georgia Southern R. Co.*, 65 *Ga.* 614, which are distinguishable from the case at bar on the facts. In the *Remshart* case this court held that injunction would not lie in favor of an owner whose land had been appropriated by a railroad company for its roadway, where the landowner had obtained a judgment for damages, according to the charter, and a claim had been filed by another railroad company, a successor in title to the property of the former railroad company, to the levy under the judgment to restrain the latter company from operating the road. The court seems to have placed its decision on the ground that the plaintiff had another remedy. If he had title, he could recover in ejectment; and if he had not title, his judgment stood in lieu thereof, and his remedy was not defeated by the claim. In the other case Gammage owned land over which the Selma, Rome & Dalton Railroad Company constructed its roadway. Compensation for the owner for taking the land was assessed on the petition of the railroad company. Pending the litigation on appeal from the assessment, the land of Gammage was sold under execution and purchased by Sheibley. The railroad company became bankrupt and was sold to the Georgia Southern Railroad Company. The compensation awarded to Gammage for taking the land for the road had not been paid; and Gammage and Sheibley, alleging that they had agreed between themselves as to the recovery

for the right of way, brought a petition for injunction to restrain the use of the roadway until the judgment assessed for the right of way was paid. The court held that under such circumstances the action could be maintained. In the former case Remshart, the owner of the land, had obtained judgment for the use of his land as provided by law; and in the latter case Gammage had been awarded a judgment for compensation for taking the land, on petition of the railroad company, and apparently had expressly conveyed the land to Sheibley. The taking and appropriating of the land by the railroad company was not, in either of these cases, consented to or acquiesced in by the owner, as was done by the owner at the time of the taking in the instant case; nor did either of the owners of the land in those cases, after the land had been appropriated, convey the land in question, as was done by the owner in this case, to a Highway Department. In both the *Remshart* and *Gammage* cases the original occupation of the land was without the consent or acquiescence of the owner, and in each case the owner had taken legal action for compensation for the taking of his land; whereas in the case at bar the owner of the land did not employ the legal means he possessed to resist the unlawful appropriation of his land. It may also be interesting to note that the court in these cases, and in decisions apparently holding that an owner of land may recover in ejectment against a public utility appropriating his land without lawful authority, or have such utility so taking his land enjoined until he is duly compensated, did not have under consideration the question of estoppel of the landowner on account of the intervening interest of the public; that is, whether or not the landowner who stands by and permits, without any legal action to prevent it, a public utility company to take his land without condemnation and construct thereon its line for the service of the public, will, after same becomes a necessary and constituent part of the service and the rights of the public intervene, be estopped, not so much on account of the interest of the company but for the good of the public, from retaking the land or from enjoining the use of the same for such service. The rule from many authorities seems to be that such laches on the part of the landowner in such cases will work an estoppel on his part, and we are of the opinion that the *Remshart* and *Gammage* decisions did not hold contrary to this rule. In our opinion, under the agreed statement of facts the defendant was

not entitled to recover. Therefore it was error to overrule the motion for new trial.

*Judgment reversed. Justices Gilbert and Bell and Judges Graham, Worrill, and Gardner concur. Presiding Justice Beck absent because of illness.*