DELTA AIR CORPORATION *et al. v.* KERSEY *et al.*
KERSEY *v.* CITY OF ATLANTA.

Nos. 14023, 14024.   APRIL 23, 1942.   REHEARING DENIED MAY 20, 1942.

*D. A. Pirkle* and *Burress & Dillard,* for plaintiff Kersey.
*Gambrell & White,* for Delta Air Corporation.

*J. C. Savage, E. L. Sterne, J. C. Murphy,* and *Hooper, Hooper & Miller,* for City of Atlanta.

DUCKWORTH, Justice. ■ The petitioner alleged that in 1927 the City of Atlanta acquired certain land in Fulton County adjoining his home, and constructed thereon an airport known as Candler Field. In the present petition filed in 1936 he seeks to recover damages from the city and certain aviation companies for injuries to person and property alleged to have been suffered by reason of the maintenance and operation of the airport, and to enjoin the defendants from maintaining and operating the airport in such a manner as to cause it to be a nuisance. The basis of the suit is the alleged noise, dust, and low flying of airplanes over petitioner's land, caused by the operation of the airport. We will first determine whether the facts alleged with reference to noise and dust are sufficient in law to constitute the airport a nuisance, as contended by petitioner. "By the act of August 23, 1927 (Ga. L. 1927, p. 779), the General Assembly expressly authorized and empowered the City of Atlanta to establish and operate municipal landing-fields for the reception, storage, and operation of airplanes. By this franchise aviation was recognized as a lawful business and also as an enterprise affected with a public interest. Upon the establishment of any such airport by the municipality, all persons using the same in the manner contemplated by law are within the protection and immunity of the franchise granted to the munici-

pality. An airport is not a nuisance per se, although it might become such from the manner of its construction or operation." *Thrasher* v. *Atlanta,* 178 *Ga.* 514 (2) (173 S. E. 817, 99 A. L. R. 158). Since it thus appears that aviation is a lawful business affected with a public interest, and that the construction of the airport complained of was authorized by statute, the case of *Georgia Railroad &c. Co.* v. *Maddox,* 116 *Ga.* 64 (4) (42 S. E. 315), is in point. There it was held: "Where a railroad terminal yard is located and its construction authorized under statutory powers, if it be constructed and operated in a proper manner, it can not be adjudged a nuisance. Accordingly, injuries and inconveniences to persons residing near such a yard, from noises of locomotives, rumbling of cars, vibrations produced thereby, and smoke, cinders, soot, and the like, which result from the ordinary and necessary, and therfore proper, use and operation of such a yard, are not nuisances, but are the necessary concomitants of the franchise granted." There is no allegation in the present petition to show that the dust and noises complained of are not those incident to the ordinary and necessary use of an airport. For all that appears with reference to these matters, the city selected a proper site for an airport and constructed and operated it in a proper manner, and in the absence of an allegation to the contrary it must be so presumed. *Thrasher* v. *Atlanta,* supra. The plaintiff relies strongly upon the *Thrasher* case to support his contention that the facts alleged with reference to noise and dust are sufficient to show that the airport is a nuisance. It is true that that case is similar in many respects to the instant case, but there are certain controlling differences in the allegations of the petitions involved in the two cases. While it was held in that case that the allegations with reference to the creation and spreading of dust in the operation and maintenance of Candler Field were sufficient to allege a nuisance, affording ground for recovery of damages and also for injunction, this ruling was based upon the fact that the allegations were sufficient to show that the dust did not result from the ordinary and necessary use of the airport, but was the result of the improper and negligent operation thereof. The court expressly refrained from deciding whether or not the allegations as to noise were sufficient to show facts constituting a nuisance. That case is therefore distinguished on its facts from the instant case. Under

the allegations of the instant petition the noise and dust complained of may be deemed to be incidental to the proper operation of an airport, and as such they can not be said to constitute a nuisance. See *Holman* v. *Athens Empire Laundry Co.*, 149 *Ga.* 345 (100 S. E. 207); *Wilson* v. *Evans Hotel Co.*, 188 *Ga.* 498 (4 S. E. 2d, 155).

■ The next question to be determined is whether the low flying complained of constitutes a nuisance. The Code, § 85-201, declares that "the right of the owner of lands extends downward and upward indefinitely;" and in § 105-1409 it is stated, that, "the owner of realty having title downwards and upwards indefinitely, an unlawful interference with his rights, below or above the surface, alike gives him a right of action." An able discussion of the common-law maxim expressed in these sections and the construction to be given it with respect to the recently developed field of aviation is contained in the *Thrasher* case, supra. In refusing to give these sections a meaning that would make any and every aerial flight over the land of another a trespass, it was said: "The space in the far distance above the earth is in the actual possession of no one; and being incapable of such possession, title to the land beneath does not necessarily include title to such space. The legal title can hardly extend above an altitude representing the reasonable possibility of man's occupation and dominion, although as respects the realm beyond this the owner of the land may complain of any use tending to diminish the free enjoyment of the soil beneath. . . Perhaps the owner of the land may be considered as being in actual possession of the space immediately covering the trees, buildings, and structures affixed to the soil, so that the act of navigating a plane through this stratum could be condemned as a trespass; but that is not a question for decision in the present case, and obviously we should not here attempt to define the altitude at which aerial navigation might be considered as constituting such an offense. It is sufficient to say that the flight of aircraft across the land of another can not be said to be a trespass without taking into consideration the question of altitude. It might or might not amount to a trespass, according to the circumstances including the degree of altitude; and even when the act does not constitute a trespass, it could be a nuisance, as where it 'worketh hurt, inconvenience, or damage' to the preferred claimant, namely,

the owner of the soil, or to a rightful occupant thereof." It was there held that flights over the land of the plaintiff at an altitude of a little less than five hundred feet did not constitute a trespass under the circumstances alleged. After the institution of the suit involved in the *Thrasher* case, the legislature enacted a statute containing the following provision: "Flight in aircraft over the lands and waters is lawful, unless at such a low altitude as to interfere with the then existing reasonable use to which the land or water or space over the land or water is put by the owner of the land or water; or unless so conducted as to be imminently dangerous to persons or property lawfully on the land or water beneath." Ga. L. 1933, p. 99; Code, § 11-101. Thus it appears to be clear that flights over lands at such a height as not to interfere with the then existing reasonable use thereof by the owner can not be said to constitute a trespass or a nuisance. However, the owner of the land is a "preferred claimant" to the air space above his land, and is entitled to redress for any use thereof which results in injury to him and his property. In the instant case complaint is made of repeated flights over the home of petitioner at an altitude of from twenty-five to fifty feet above the premises. While there can hardly be any doubt that an owner of land on which his home is located must be said to have legal title to the air space above his land to a distance of at least fifty feet, with the consequence that any flight by aircraft within this space constitutes a trespass, it is not here necessary to determine whether the low flights complained of constitute trespasses. It is sufficient to say that the allegations of the petition show that the repeated low flights, with their accompanying noises and dust-laden gusts of air, are dangerous to the health and life of petitioner and his family, and thus constitute a continuing nuisance.

The city contends, however, that the construction, maintenance, and operation of an airport is a governmental function, and claims that by reason of this fact it is immune from liability for any damage resulting from the construction or maintenance thereof. To support its position that the operation of the airport is a governmental function, the city relies upon the Code, § 11-202, which provides: "Any lands acquired, owned, leased, controlled, or occupied by such counties, municipalities, or other political subdivisions for the purpose or purposes enumerated in section 11-201

[authorizing construction and operation of airports by municipalities and other political subdivisions], shall and are hereby declared to be acquired, owned, leased, controlled, or occupied for public, governmental, and municipal purposes." The petitioner attacked this section as unconstitutional for several reasons; but for the purposes of this case we may assume that it is constitutional, because it does not have the effect of barring any of the relief to which the petitioner is entitled. *Carter* v. *Dominey,* 157 *Ga.* 167 (121 S. E. 236); *Mystyle Hosiery Shops* v. *Harrison,* 171 *Ga.* 430 (3) (155 S. E. 765). While it is true that a municipal corporation is not liable for acts of negligence of one of its servants in discharging a governmental function of the corporation, yet a municipal corporation can not, under the guise of performing a governmental function, create a nuisance dangerous to life and health or take or damage private property for public purpose, without just and adequate compensation being first paid. The maintenance of the sewerage and drainage system of a city is a governmental function (*Love* v. *Atlanta,* 95 *Ga.* 129, 22 S. E. 29, 51 Am. St. R. 64), but this court has held that a city can not lawfully create in connection therewith a nuisance dangerous to life and health; and that where such a nuisance is created and its effect is specially injurious to an individual by reason of its proximity to his home, he has a cause of action for damages, and may enjoin the same. *Mayor &c. of Waycross* v. *Houk,* 113 *Ga.* 963 (39 S. E. 577); *Bell* v. *Savannah,* 139 *Ga.* 298 (77 S. E. 165); *Kea* v. *Dublin,* 145 *Ga.* 511 (89 S. E. 484); *City Council of Augusta* v. *Cleveland,* 148 *Ga.* 734 (98 S. E. 345); *City of Blue Ridge* v. *Kiker,* 189 *Ga.* 717 (7 S. E. 2d, 237). See also *Lewis* v. *Moultrie,* 27 *Ga. App.* 757 (110 S. E. 625); *City of Macon* v. *Roy,* 34 *Ga. App.* 603 (130 S. E. 700). "That which the law authorizes to be done, if done as the law authorizes it to be done, can not be a nuisance." *Burrus* v. *Columbus,* 105 *Ga.* 42 (31 S. E. 124). The airport having been authorized by law, the ordinary and necessary concomitants thereof can not be held a nuisance.

But can it be said that flights over adjoining lands at such a low height as to be imminently dangerous to the life and health of the ·occupants thereof are a necessary concomitant of an airport? We do not think this question can be answered in the affirmative. No reason appears why the city could not obtain lands of an area suf-

ficient for the operation thereon of an airport in such a manner as not to require such low flights as are here complained of. For the sake of public convenience adjoining-property owners must suffer such inconvenience from noise and dust as result from the usual and proper operation of an airport, but their private rights are entitled to preference in the eyes of the law where the inconvenience is not one demanded by a properly constructed and operated airport. The city had ample authority to acquire all land necessary for the airport; but from the allegations of the petition it appears that it did not acquire enough land to enable the airport to be operated without requiring such low flights over petitioner's land as to unreasonably interfere with his use thereof, or, if it obtained enough land, it improperly located the runway in such a manner as to require the low flights. It can not be said that the airport can not be a nuisance because its construction was authorized by the legislature. It will not be assumed that the legislature in authorizing the city to construct airports intended to authorize it so to construct the airports as to impose upon adjoining-land owners unnecessary burdens. See, in this connection, *Towaliga Falls Power Co.* v. *Sims,* 6 *Ga. App.* 749 (6) (65 S. E. 844) ; 39 Am. Jur. 483, § 206. A city has no greater power and authority with respect to the construction and operation of an airport than it has with respect to the construction and operation of sewer and drainage systems. This court is clearly committed to the proposition that a city must so construct and maintain sewer and drainage systems as not to create a condition dangerous to life and health. In addition to the cases cited above, see *Reid* v. *Atlanta,* 73 *Ga.* 523; *Smith* v. *Atlanta,* 75 *Ga.* 110; *Holmes* v. *Atlanta,* 113 *Ga.* 961 (39 S. E. 458) ; *Massengale* v. *Atlanta,* 113 *Ga.* 966 (39 S. E. 578) ; *Bass Canning Co.* v. *MacDougald Construction Co.,* 174 *Ga.* 222 (162 S. E. 687) ; *Loughridge* v. *Dalton,* 166 *Ga.* 323 (143 S. E. 393). In constructing an airport the city has the same duty. Under the allegations of the petition the city has so constructed and maintained Candler Field as to require such low flying over the home of petitioner as to constitute an unreasonable interference with the health of petitioner and his family. The court erred in sustaining the demurrer of the city and in dismissing the action as to this defendant.

We are limited, in our rulings in this case, exclusively to the

allegations of the petition. No question of the plaintiff's laches is presented, and nothing ruled here should be taken to imply that he should or should not, upon proper pleadings and evidence, be barred by laches. This decision does not mean that if on the trial the plaintiff is able to prove his case as alleged the entire airport should be abated. In fact the petitioner does not seek this result. He merely seeks to enjoin the objectionable features of the airport, namely dust, noise, and low flying; and only as to the latter has he stated a cause of action. From all that appears, the conditions causing the low flying may be remedied; but if on the trial it should appear that it is indispensable to the public interest that the airport should continue to be operated in its present condition, it may be that the petitioner should be denied injunctive relief. See *Gammage* v. *Georgia Southern R. Co.*, 65 *Ga.* 614; *Charleston & Western Carolina Railway Co.* v. *Hughes,* 105 *Ga.* 1 (4) (30 S. E. 972, 70 Am. St. R. 17); *Phillips* v. *DuBignon, 123 Ga. 17* (50 S. E. 928). Having held that the allegations of the petition relating to a nuisance resulting in special damage to the petitioner were sufficient to withstand the general demurrer, it is unnecessary to render a decision on the other feature of the petition alleging the taking and damaging of private property without compensation, in violation of the constitution.

■ The allegations of the petition were sufficient as against a general demurrer to show that the city and aviation companies were jointly and severally liable for the maintenance and construction of the airport as a continuing nuisance. The allegation of the petition to the effect that the airport was established, maintained, and operated in pursuance of a plan and scheme between the city and the aviation companies is the same in all substantial particulars as those in the *Thrasher* case, supra, and in division 1 of that opinion it was held that these allegations were sufficient to show joint and several liability. It follows that the court properly overruled the demurrer of the defendant aviation companies, and erred in sustaining the demurrer filed by the City of Atlanta.

*Judgment affirmed in case No. 14023; reversed in case No. 14024. All the Justices concur, except*

JENKINS, Justice, dissenting. This suit is based on the negligent exercise of an admitted governmental function in locating, laying out, and planning a municipal airport, whereby it is alleged

that the inadequate size of the airport, and the proximity of a runway to the plaintiff's residential property necessarily caused its use to injure and damage his adjoining property and the health and comfort of the plaintiff, in that airplanes in taking off from the runway as constructed would be obliged to rise from a distance too close to his property for them to gain sufficient altitude to prevent traveling too low above his residence. It does not appear from the petition that the air-field was not constructed in accordance with the plans or blue-prints which the municipal authorities had formulated in the exercise of their governmental functions; nor does it appear that the air-field, after being thus constructed in accordance with the plans, was then negligently maintained other than in a manner which the plans themselves necessitated. In fact, headnote 2 of the majority opinion recognizes this to be true, in holding that: "Repeated flights over the land of another owner at such a low height as to be dangerous to health and life of the owner amount to a nuisance; *and this is true though such low flights are necessary in order to use an adjoining airport.*" Accordingly, the gist of the negligence charged against the city consists in the negligent exercise of its governmental functions in locating, planning, and laying out the airport.

This court in *Langley* v. *Augusta,* 118 *Ga.* 590, 598 (45 S. E. 486, 98 Am. St. R. 133), used this language: "The officers in charge of the affairs of a municipal corporation may select places for the construction of a system of sewerage and drainage, and adopt a plan for such construction, without rendering the city liable in damages for injuries resulting from such selection and from the proper construction of the system." This same principle seems to be recognized and stated in *Georgia Railroad &c. Co.* v. *Maddox,* 116 *Ga.* 64 (4), quoted in the present majority opinion. It was pointed out in the *Langley* case that if, after the governmental function has been exercised, the municipal corporation is negligent in its improper construction, or after a proper construction is negligent in its maintenance, the city will be liable in damages for the injury thus occasioned. See also, to the same effect, the opinion by Judge Bleckley in *City of Atlanta* v. *Warnock,* 91 *Ga.* 210, 214 (18 S. E. 135, 23 L. R. A. 301, 44 Am. St. R. 17); and *Thrasher* v. *Atlanta,* 178 *Ga.* 514, 518 (173 S. E. 817), in which this principle is recognized. However, the con-

trolling rule, quoted from the *Langley* case and recognized in other cases, has not been uniformly followed. For example, the precise question as to whether the exercise of a purely governmental function could constitute a nuisance was dealt with at great length, and a contrary conclusion reached, in *Bass Canning Co.* v. *Mac-Dougald Construction Co., 174 Ga.* 222 (supra), where the decision of the Court of Appeals in *MacDougald Construction Co.* v. *Bass Canning Co., 42 Ga. App.* 533 (156 S. E. 628), was reversed by a divided bench. It is my opinion that the principle as specifically laid down in the *Langley* case and recognized by the two dissenting Justices in the *Bass* case is sound, and that the exercise by a municipality of a purely governmental function does not render it subject to a suit for damages as for a nuisance; but that in such a case the injured party is relegated to his constitutional right to damages for injuring private property for public use. As already stated, a city may, however, be liable in a suit for damages as for a nuisance, where its acts done in a ministerial capacity negligently carry into effect the governmental plan adopted by the municipal authorities; or where the system, even though properly constructed, is thereafter negligently maintained. As I construe them, some at least of the cases relied upon in support of the principle laid down in the *Bass* case should properly be placed in one or the other of the two last-mentioned categories; and it is my opinion that the admitted confusion in the decisions of our own court and the conflicting rules of other jurisdictions arise from a misconstruction or misapplication of facts relating to the ministerial functions resulting in a negligent construction or negligent maintenance, as distinguished from the previous exercise of a purely governmental function in adopting a plan.

Be that as it may, and assuming for the purpose of this dissenting opinion that the principle announced in the *Langley* case be wrong, and that the principle announced in the elaborately presented *Bass* case be correct, and that the city in the exercise of its purely governmental functions in locating, laying out, and planning the airport had created what could under the pleadings be properly adjudged a continuing nuisance, and that for maintaining such a nuisance the city could be held liable in damages upon a suit maintained on that theory at any time thereafter within the period of limitation next preceding—even assuming all this—I

still do not think that the injured party, who shows by his petition that he not only sat by and allowed such a public utility to be constructed, but has waited for a period of nine years before complaining, can now proceed to *enjoin its operation*. As was recognized in the *Thrasher* case, supra, such a utility is one which affects the public interest, and is manifestly one in which every citizen now has a most vital concern. In *Georgia Power Co.* v. *Kelly,* 182 *Ga.* 33, 37 (184 S. E. 861), this court in an opinion delivered by Judge Graham said: "Where a railroad company enters upon land and constructs its road without compensation to and without authority from the owner, and the owner allows the land to be so taken without legal opposition, and acquiesces in the unlawful taking and consequent appropriation of the property to a great public use until the same has become a component part of the property required by the railroad to perform its public duties, such owner will be deemed to have waived his right to retake the land or have the operation of the road enjoined. . . If a landowner stands by and permits, without legal objection, a public utility company to appropriate his land to its necessary corporate use until such becomes a necessary and constituent part of its service to the public, and the rights of the public intervene to such extent that to oust the company would interrupt the service and deny it to the public, the landowner, not for the protection so much of the company but for the benefit of the public, will be estopped from recovering the land in ejectment or from enjoining its use for the service, but will, if he moves in time, be remitted to an appropriate action for damages." See also, in this connection, *Wood* v. *Macon & Brunswick R. Co.,* 68 *Ga.* 539 (6), 548; *Moore* v. *Atlanta,* 70 *Ga.* 611 (4); *Charleston &c. R. Co.* v. *Hughes,* 105 *Ga.* 1, 16 (supra); *Atlanta, Knoxville & Northern Ry. Co.* v. *Barker,* 105 *Ga.* 534, 537, 538 (31 S. E. 452); *Avery & Sons Inc.* v. *Atlanta,* 163 *Ga.* 591 (3), 597 (136 S. E. 789); Code, § 72-204. The majority opinion seems clearly to hold that if the plaintiff proves his case as laid, the airport, or some vital and important undisclosed portion thereof, may be declared a nuisance and its operation enjoined. It is true that the opinion says that such an injunction "may not" necessarily be imposed, but the holding that such *might* properly be done, to the disruption of the public service and to the harm of the public welfare, is in

my opinion wholly unauthorized. This dissenting view is presented irrespectively of the application of any statute of limitations, the doctrine of laches, or the principle of estoppel, which it is generally necessary for the defendant to specially invoke. Here, while it is true that the intervening rights of the parties might perhaps involve, if properly invoked, the principles of laches and estoppel on the theory that the plaintiff might have had but might have lost his right to maintain the suit for injunction, such is not the basis of the conclusions stated in this dissent. No pleaded recourse need be had to the principles of limitation, laches, or estoppel, where, as here, it appears on the face of the petition that the plaintiff is seeking to disturb by injunction the operation of a public utility, in which the general public and every citizen thereof has acquired a vested right coupled with a vital interest; and that all of these rights became and have remained fixed and settled for a period of nine years before the writ of injunction was sought. Here, it is not a question as to whether the plaintiff's right to an injunction against the defendants may have been lost; but the petition shows on its face that under the facts as pleaded, showing a contrary vital interest in the public, no such cause of action can be taken to exist.

It is therefore my opinion: 1st. That the trial court would be unauthorized to declare that to be a nuisance which has been established in accordance with the plans and specifications of the municipality in the exercise of its governmental functions; and that accordingly no cause of action exists for resulting damages as from a continuing nuisance. 2d. Whether, under the conflicting decisions, the preceding statement be sound or not, that in no event, under the facts as pleaded in his petition, should the plaintiff now be allowed to enjoin the operation of the utility, in which the public has acquired a vested interest, and in the maintenance of which it has a vital concern. 3d. The plaintiff not only seeks to recover consequential damages for the maintenance of a continuing nuisance, which, as stated in this dissent, he can not in my opinion recover, but he has apparently also sought compensation, measured by the difference in the market value of the property before and after the alleged injury, under the constitutional provision that private property can not be taken or injured without just compensation being paid. In the absence of any demurrer setting up

the statute of limitations, it is my opinion that the petition as grounded on this last-stated basis, but on that alone, was not subject to general demurrer.