Argued June 8, modified and remanded September 14, 1960

# ATKINSON ET AL *v.* BERNARD, INC.

### 355 P. 2d 229

*Winfrid K. Liepe,* Portland, argued the cause for appellant. With him on the briefs were William H. Morrison, Portland, Carrell F. Bradley, Hillsboro, Stuart W. Richardson, and Maguire, Shields, Morrison, Bailey & Kester, Portland.

*Wayne Hilliard,* Portland, argued the cause for respondents-cross-appellants. With him on the brief were William J. Moshofsky and Koerner, Young, McColloch & Dezendorf, Portland.

Before McALLISTER, Chief Justice, and ROSSMAN, WARNER, GOODWIN and HOLMAN, Justices.

GOODWIN, J.

The defendant operator of a small airport appeals, and the plaintiff landowners cross-appeal, from a decree of the circuit court enjoining part, but not all, of the flights from the airport over the lands of the plaintiffs. The parties will be referred to in this opinion as the Airport and the plaintiffs.

In 1918 the Airport commenced operation about one mile north of the city center of Beaverton. The Airport serves mainly single-engine, non-commercial aircraft of the type commonly flown for business and pleasure by persons having private licenses as distinguished from larger aircraft found in military and airline service. The present runway is about 2500 feet long.

Some time after 1948, a suburban residential area known as Cedar Hills was developed directly north of the airport. Building sites and homes were sold to persons desiring to purchase them. Some 68 property owners joined as plaintiffs in 1955 in the present suit, and 21 of them testified at the trial. The plaintiffs located nearest the airport are approximately 1000 feet north of the runway. Others are located at varying distances greater than 1000 feet from the end of the runway, but all are within an area affected in some degree by the sound of aircraft landing and taking off.

The evidence showed that during fair weather the wind commonly blows from the north, and most of the flights take off toward the north during fair weather. The evidence further showed that a substantial number of flights take place early on Sunday mornings when the air is calm but when the plaintiffs are not necessarily ready to greet the new day.

The complaint alleged that, in taking off over the

plaintiffs' homes, the planes fly at altitudes varying from 50 to 300 feet above the rooftops, and in so doing create noises and vibrations which substantially interfere with the use and enjoyment of the lands of the plaintiffs. There was testimony in support of these allegations, but the matter of altitude was sharply disputed.

The complaint further alleged that such flights constitute a hazard. There was evidence that during the past thirty years at least two planes had crashed to the north of the airport premises and near the property occupied by certain of the plaintiffs. Two others had crashed to the south of the airport. The plaintiffs expressed concern that future crashes could be expected with disastrous results for nearby householders.

The plaintiffs demanded an injunction of all flights taking off to the north, as such flights necessarily pass over one or more of their homes before gaining cruising altitude. As the only runway lies north and south, such an injunction would, for all practical purposes, put an end to fair-weather flying from the airport. During the winter, the evidence showed, the prevailing winds are from the south.

The trial judge viewed the premises, and, upon stipulation of the parties, observed a demonstration of several flights over the property of the plaintiffs.

The decree enjoined flights taking off over the property of the plaintiffs by all aircraft which make "appreciably more noise than [a certain 1954 Piper Tri-Pacer 135 HP owned at that time by the State of Oregon]."

The Airport appeals from the decree, contending that it is too vague and indefinite for enforcement.

The plaintiffs cross-appeal and demand an end to all take-offs over their lands.

No decibel readings or other objective acoustical data were made available to the trial court. The evidence showed that atmospheric conditions have some influence upon what those on the ground may hear as the result of flights over their property, but the nature and extent of such influence was undisclosed.

There are a number of problems raised in the briefs and argued before this court, but the principal question dealt with below was the extent to which the plaintiffs were entitled to noise abatement.

The trial court found, and the evidence supports the finding, that at least some of the plaintiffs were annoyed and inconvenienced by the noise of unspecified "larger" or "noisier" planes taking off over their rooftops. The noise on take-off bears some relation to the kind of engine, the pitch of the propeller, and the angle of climb between the time the plane leaves the runway and the point where it reaches flying or cruising altitude. The evidence left the exact relationship somewhat obscure, but mere size of aircraft alone appeared to be less significant than the other factors.

Here we are dealing with a privately operated airport and the question of enjoining certain flights, all of which, to some extent, invade the airspace below navigable heights and above the surface. This was the situation in *Anderson v. Souza,* 38 Cal2d 825, 844, 243 P2d 497, 509. There the court indicated that the landowners were entitled to limited relief and remanded the cause for further evidence.

To the facts in the instant case, the trial court applied the "privileged trespass" theory found in the

Restatement, 1 Torts 460, § 194 (1934). The Restatement rule is as follows:

"TRAVEL THROUGH AIR SPACE.

"An entry above the surface of the earth, in the air space in the possession of another, by a person who is traveling in an aircraft, is privileged if the flight is conducted

"(a) for the purpose of travel through the air space or for any other legitimate purpose,

"(b) in a reasonable manner,

"(c) at such a height as not to interfere unreasonably with the possessor's enjoyment of the surface of the earth and the air space above it, and

"(d) in conformity with such regulations of the State and federal aeronautical authorities as are in force in the particular State."

This court referred to the above-quoted section of the Restatement when it said in a *dictum* in 1948:

"* * * Air travel over a plaintiff's land is still recognized as trespass prima facie imposing liability but the rights of airplane travel are established or recognized by the doctrine of privilege * * *." *Amphitheaters, Inc. v. Portland Meadows,* 184 Or 336, 344, 198 P2d 847, 5 ALR2d 690.

Under the "privileged trespass" theory, two considerations determine whether the invasion of the landowner's airspace will be privileged: (1) the flight itself must be reasonable, thus eliminating stunting, whimsical changes of propeller pitch and the like, at altitudes which affect those on the ground; and (2) the flight must be at such a height as not to interfere unreasonably with the enjoyment of the surface by the person in possession. See *Anderson v. Souza,* supra; *Brandes v. Mitterling,* 67 Ariz 349, 196 P2d

464; *Delta Air Corporation v. Kersey,* 193 Ga 862, 20 SE2d 245, 140 ALR 1352. As will be seen later, reasonableness becomes the key issue in each case.

It is the process of becoming airborne which causes the difficulty in the case now before the court, as in most of the litigation elsewhere. A partial bibliography, together with a challenging presentation of the "take-off" problem, may be found in William B. Harvey, *Landowners' Rights in the Air Age: The Airport Dilemma,* 56 Mich L Rev 1313 (1958).

Most heavier-than-air flying machines presently used by private citizens require a horizontal space beyond the end of the runway in which to ascend or descend to or from a flying, or cruising, altitude. The so-called glide-angle or "glide plane" needed for taking off may vary from a ratio of seven feet of horizontal movement to one foot of ascent or descent for light aircraft of modest speed to a ratio of 50 to 1 for high-powered planes of greater weight and velocity. Harvey, 56 Mich L Rev, supra at 1314.

Many courts have considered the problems which are inherent in every airport lacking sufficient surface ownership to escort its patrons aloft to navigable airspace entirely over its own land. As noted by Professor Harvey:

"If the prime method for ascertaining the limits of the ownership-trespass zone in airspace is by determining whether the landowner's use and enjoyment of the surface have been subjected to unreasonable interference, it is apparent that the concept of nuisance is equally available with trespass as an analytical tool. In fact, some decisions range freely over both the trespass and the nuisance rationales—the airspace zone in which intrusion by aircraft would be a nuisance ap-

parently being considered in certain opinions as coterminous with that in which it would constitute a trespass * * * [citing cases], while others which rely upon nuisance as the ground of decision might easily be interpreted in trespass terms * * * [citing cases]." 56 Mich L Rev, supra at 1315.

At the point where "reasonableness" enters the judicial process we take leave of trespass and steer into the discretionary byways of nuisance. Each case then must be decided on its own peculiar facts, balancing the interests before the court.

Whether Oregon courts should meet the airport problem with the ancient and formal doctrine of trespass or the more flexible concept of nuisance is still an open question. *Amphitheaters, Inc. v. Portland Meadows,* supra, hinted that the law of trespass might apply in this state, and the trial judge in the instant case understandably proceeded accordingly. The decided cases reveal that the same result might well be reached in a given case by following either trespass law or nuisance law, but the distinction is not as academic as it may at first appear to be. *Martin v. Reynolds Metals Co.,* 221 Or 86, 342 P2d 790, 792. For example, in the instant case, the airport attempted to bring into the case the concept of "coming to the nuisance," and was prevented from so doing when the trial court accepted the able argument of counsel for the landowners that the case was, after all, one of trespass.

This case was well tried by able and learned counsel for both parties, and by a capable and experienced trial judge. This court has, therefore, an opportunity to choose the best rule of law to be followed in airport cases upon a record which comes from the trial court in excellent condition.

In re-examining the host of cases in state and federal courts, we are impressed with the logic of those cases which have met the problem frankly as a matter for the application of the law of nuisance. If the mind of man can invent and operate a flying machine, it ought to be able to devise a rule of law which is adequate to deal with the problems flowing from such inventiveness. This is the challenge of the common law.

Reasonableness is so inherent in the judicial balancing of interests in the airport cases that most of the decisions cited by counsel simply proceed to investigate the facts and then grant or deny relief upon the basis of the reasonableness of one interest yielding to another in a given case. See Rhyne, Airports and the Courts (National Institute of Municipal Law Officers, Washington, D. C., 1944) 82. In following such a balancing of interests as a means of reaching a decision, the courts employ nuisance concepts with only a passing gesture in the direction of the law of trespass. See *Swetland v. Curtiss Airports Corporation*, 41 F2d 929, modified 55 F2d201, 83 ALR 319, and cases collected therein.

In addition to balancing the private interests of the contesting parties, at least one court has recognized that there is a co-existent element of public interest. There are really two public interests: (1) in protecting the property rights of all landowners, and (2) in protecting the freedom of air travel. The point at which the two interests come into conflict is the point where the unreasonable must give way to the reasonable. Thus, in *Delta Air Corporation v. Kersey*, supra, the court sent the case back to the trial court with a cautionary instruction that the public interest in flight should be taken into account.

See also C. Z. German, *The Conflicting Interest of Airport Owners and Nearby Property Owners,* 20 Kan City L Rev 138. The writer of the law review article, who was at that time a regional attorney for the Civil Aeronautics Administration, suggested that the test of reasonableness may be used equally well when an airport seeks to enjoin activity on neighboring lands which may be claimed to be a hazard to navigation.

■ We hold that whenever the aid of equity is sought to enjoin all or part of the operations of a private airport, including flights over the land of the plaintiff, the suit is for the abatement of a nuisance, and the law of nuisance rather than that of trespass applies.

The nuisance theory is in accordance with modern thinking in the field, and with common sense. The flexibility of nuisance law enables the trial judge to take into consideration, openly with proper pleadings and evidence, all relevant factors which will assist him in balancing the interests of the parties before the court in light of relevant public interest.

The Restatement rule which attempts to pour new wine into the old bottle of trespass appears to be losing adherents, and does not commend itself to this court as a rule to be cemented into the case law of Oregon. See Herbert David Klein, *Cujus Est Solum Ejus Est . . . Quousque Tandem?,* 26 J Air L & Co 237, 254; Wherry and Condon, *Aerial Trespass under the Restatement of the Law of Torts,* 6 Air L Rev 113, 124.

We have previously said that reasonableness in such cases is primarily a question for the trial judge to determine from all the facts; "* * * whether a particular annoyance or inconvenience is sufficient to

constitute a nuisance depends upon its effect upon an ordinarily reasonable man, that is, a normal person of ordinary habits and sensibilities * * * [citing cases]." *Amphitheaters, Inc. v. Portland Meadows,* supra, 184 Or at 349.

The trial judge found that flights which make sufficient noise to constitute an unreasonable interference with the rights of the landowners consisted mainly of isolated flights of planes heavier than those ordinarily using the airport at the time of trial. We are unable to learn from the record just how such aircraft might accurately be described, but presumably the line can be drawn somewhere.

The trial judge attempted to draw the line by using a specific model of plane which he described in the decree. For the purpose of regulating its future conduct, the Airport is entitled to know with greater certainty what flights will be permitted and what flights will be enjoined. The state-owned Tri-Pacer may not always be available as a template for measuring excessive sound.

The landowners are entitled to be relieved from noise and vibration, if any, which in fact substantially limit their enjoyment of their property. This relief, however, cannot be based solely upon the subjective likes and dislikes of a particular plaintiff. Relief, to be workable, must be based upon an objective standard of reasonableness. One witness testified, for example, that aircraft engine noises interfered with the use of the telephone, while another plaintiff said he failed to notice a particular flight because he was talking on the telephone at the time. Difficult as it may be, the trial court should translate its findings as to reasonableness into an objective test.

*York et ux v. Stallings et al,* 217 Or 13, 341 P2d 529, dealt with a prayer for an injunction against a sawmill causing cinders to fall upon the plaintiff's land. This court held that air pollution studies make it possible to measure fallout with some degree of accuracy and therefore an injunction would not lie until after the trial court determined the nature and extent of fallout so that a decree could be framed which would eliminate the nuisance and yet preserve the inoffensive portions of the defendant's operation.

Similarly in this case, while the plaintiffs may be entitled to some relief from unreasonable noise, every noise is not unreasonable. In an opinion denying injunctive relief to neighbors of a rock quarry where blasting occurred, the New Jersey court said:

"* * * We think it cannot be said that this noise goes beyond the limits of reasonable adjustment to the conditions of a locality where there has been a quarry for years, and reasonable adjustment of the needs of the maker to the needs of the listeners * * *." *Benton v. Kernan,* 130 NJ Eq 193, 200, 21 A2d 755, 759.

Before the court can arrive at an objective standard of reasonableness, it will be necessary to perform acoustical studies under the supervision of the trial court. A decree thereafter should be drawn in terms of decibel readings set forth in relation to relevant atmospheric conditions with sufficient latitude for inconsequential deviations. An objective measurement of noise levels will then be established and such a decree can be properly enforced.

The decree appealed from is vacated and the cause remanded for further evidence in accordance with the views expressed herein. Counsel should be given a

reasonable time in the trial court in which to prepare and submit additional evidence.

■ In the event that no further evidence is forthcoming, the decree should be reinstated, but modified so that the only flights from the airport to be enjoined would be flights taking off to the north by aircraft capable of carrying more than four adult persons with their usual luggage or by cargo planes of a capacity of more than 1000 pounds plus the crew.

■ As noted earlier, the trial judge considered the case primarily as one for noise abatement. This court concurs in his findings that a cause of suit based on alleged hazard was not supported by the evidence. Four crashes outside the airport premises from planes using the runway during a period in excess of 30 years can not be considered proof of such immediate peril as to justify an injunction against all flights from the airport. *Thrasher v. City of Atlanta,* 178 Ga. 514, 519, 173 SE 817, 820, 99 ALR 158.

The cause is remanded for further evidence to be ordered by the trial court within a reasonable time from the date of the mandate.

No costs to any party.