Argued April 2, affirmed May 31, 1974

SEAGRAVES ET UX, *Respondents, v.* PORTLAND
CITY TEMPLE ET AL, *Appellants.*

522 P2d 893

*Alan K. Brickley* of Davis, Jensen, DeFrancq & Holmes, Portland, argued the cause and filed a brief for appellants.

*Norman F. Webb,* Salem, argued the cause and filed a brief for respondents.

O'CONNELL, C. J.

This is a suit to enjoin defendants' operation of an airport on property adjacent to plaintiffs' farm. The trial court held that defendants' conduct constituted a nuisance and entered a decree imposing various restrictions on the use of the airport. Defendants appeal.

Plaintiffs' property consists of approximately 300 acres, 80 acres of which is located east of defendants' airstrip. The general character of the neighborhood in which plaintiffs' and defendants' property is located is agricultural-residential. Plaintiffs have farmed their land since 1960.

In 1968 defendants' predecessor in interest began to use an airstrip, the eastern end of which is

approximately 1400 feet west and 400 feet south of plaintiffs' home. Defendants purchased their property in 1969 and continued to operate the airport under the name "Big Sky Youth Ranch." They obtained a license to operate the airport from the State Board of Aeronautics in 1970.[1]

Most take-offs from the airstrip are to the east, usually crossing over most of plaintiffs' property before the aircraft turns north, the typical pattern bringing the aircraft close to plaintiffs' home. Some of the take-offs were made to the west, contrary to the restriction in defendants' license. The amount of flight activity varied in intensity from time to time. There were as many as 38 take-offs or landings in a single day. On one occasion there were 25 take-offs or landings in less than an hour and a half. Most of the flights took place at low altitudes over plaintiffs' land.

Plaintiffs complain not only of the interference with the use of their property resulting from the flight of aircraft over their property, but also interference resulting from activities at the airport itself, resulting in noise and vibrations.[2] The defendants used the air-

---

[1] The license as later modified contained the following restrictions:

"1. This airport is for private use only by aircraft under the control of the Big Sky Youth Ranch.
"2. Take-offs will not be permitted to the west and landings will not be permitted to the east.
"3. The airport is to be used only by those aircraft whose manufacturer's specifications indicate that they can safely operate on a field of this length.
"4. No commercial operations are permitted."

[2] Plaintiffs also complained and presented evidence to show that defendants' operation of this airport created a threat of injury to persons and property on their farm, caused damage to the tops of several trees along the western boundary of their

port to give flying instructions, to offer recreational flying, to provide an aerial photography service, and to carry on other flying activities.

The trial court found that the interference with plaintiffs' use of their property constituted a nuisance and entered a decree enjoining the use of the airport in various particulars. Among other things, the decree provided:

> "That all take-offs and landings to and from the east from this airport shall be made by a pattern with a base leg to and from the north with a prohibition against a base leg to and from the south over the air of plaintiffs' buildings.

\* \* \* \* \*

> "That all take-offs and landings to and from the west from this airport may be made by any approved traffic pattern when and if such take-offs and landings to and from the west are permitted under the State Board of Aeronautics and the Federal Aviation Agency."

Defendants' first contention is that plaintiffs failed to produce sufficient evidence of the intensity of the noise and therefore failed to establish the substantiality of the interference with plaintiffs' use of their property. Plaintiffs introduced evidence through the testimony of several witnesses to the effect that the noise was so loud that at plaintiffs' home television and radio programs could not be heard, that normal conversation was impossible, and the noise was so loud that it interfered with one's sleep. The noise was var-

property, and caused dust damage to their crops. The trial court found the evidence insufficient to establish defendants' liability for any of these problems. Plaintiffs do not challenge these findings and therefore it is not necessary to address them on this appeal.

iously described as "much worse than a motorcycle or tractor," "louder than a logging truck" etc., and that the noise from the aircraft could be heard over noises from a lawnmower or from three combines, or from a tractor, or from a rototiller.

■ Defendants rely upon *Atkinson v. Bernard*, 223 Or 624, 355 P2d 229 (1960) as holding that evidence such as adduced by plaintiffs would not be enough and that there must be "objective evidence" in the form of a decibel reading before a nuisance based upon noise can be made out. This is a misconstruction of the *Atkinson* case. That case merely holds that relief "cannot be based solely upon the subjective likes and dislikes of a particular plaintiff." (223 Or at 634). This does not mean, however, that the only method of proving the existence of a nuisance resulting from noise is by scientific measurement.

■ The cases are legion in which the extent of the interference with reasonable use and enjoyment attributable to noise has been established by the evidence of witnesses describing the character and effect of the noise. To establish this element of nuisance all that need be established is that the annoyance is regarded as harmful to the health or comfort of ordinary people.[9] This can be done by a descriptive account of the manner in which the noise unreasonably interferes with the usual course of living by ordinary people. We

---

[9] As pointed out by 4 Restatement of Torts § 826, *comment b*, p. 241 (1939) in determining the larger question of whether a nuisance exists: "* * * The question is not whether a reasonable person in the plaintiff's or defendant's position would regard the invasion as unreasonable, but whether reasonable persons generally, looking at the whole situation impartially and objectively, would consider it unreasonable. Regard must be had not only for the interests of the person harmed but also for the interests of

hold that the evidence was sufficient to establish the substantiality of defendants' interference with plaintiffs' use of their property.

■ Defendants next argue that the trial court had before it no evidence to support that part of the decree curtailing defendants' flights which took place with a pattern of take-off and landings to the west of defendants' and plaintiffs' property. This part of the decree provided as follows:

> "That all take-offs and landings to and from the west from this airport may be made by any approved traffic pattern when and if such take-offs and landings to and from the west are permitted under the State Board of Aeronautics and the Federal Aviation Agency."

There was evidence that a part of the noise causing an interference with plaintiffs' use of their property emanated from aircraft on the airstrip. Some of this noise would be attributable to take-offs to the west which began at the easterly end of the airstrip, close to plaintiffs' property. It will be noted that the decree did not prohibit take-offs and landings to and from the west—it simply restricted defendants to those activities permitted by the aeronautical agencies of the state and federal government. Defendants' license prohibited take-offs to the west and landings to the east. With this restriction in the license and with the decree keying it to the license, we fail to see how the decree altered defendants' rights.

---

the actor and the interests of the community as a whole. Determining unreasonableness is essentially a weighing process, involving a comparative evaluation of conflicting interests in various situations according to objective legal standards."

This language is retained in Restatement (Second) of Torts, § 826, *comment c* (Tentative Draft No. 17, 1971).

The decree provided that "no charitable instruction or recreational rides be afforded to other persons." Defendants objected to this part of the decree and proposed the following limitation: "That no charitable instruction or recreational rides be afforded to other persons using the air space over the land of the plaintiffs."

■■ It is clear from defendants' proposal that they were not claiming the trial court lacked the authority to restrict the various purposes for which they used the airport. Rather, defendants' proposal attacks the decree simply on the ground that there was no physical intrusion into plaintiffs' property. It is elementary that a nuisance can be created without a physical intrusion. There was evidence to support a finding of such a nuisance for there was testimony showing that noise was generated not only by flights over plaintiffs' land, but also by the aircraft while on the airstrip and in the course of taking off to the west. The frequency of such activity was one of the major factors in creating this nuisance and in light of the evidence that much of the volume of activity was a result of instructional and recreational flying, the trial court was well within its authority in framing the decree as it did.

The decree is affirmed.